## Case No. 14,790.

### UNITED STATES v. CHEESEMAN et al.

[3 Sawy. 424; [1] 21 Int. Rev. Rec. 340.]

Circuit Court, D. California. Sept. 13, 1875.

STATUTES — REPEAL BY IMPLICATION — ASSISTANT TREASURER'S BOND—LIABILITIES OF SURETIES.

1. Where a statute revising another act embraces the entire subject-matter of the prior act, with additional provisions, it must be regarded as a substitute for, and as repealing such prior act.

2. The act of congress of June 30, 1864, to provide internal revenue, etc. (13 Stat. 294–297), embraces the entire subject-matter of section

2 of the act of December 25, 1862 (12 Stat. 632), and repeals the latter section.

3. The liabilities of sureties are strictissimi juris, and cannot be extended beyond the reasonably necessary import of the language of the bond.

[Cited in U. S. v. Adams, 24 Fed. 353.]

[Cited in brief in City of Harrisonville v. Porter, 76 Mo. 359. Cited in Milwaukee Co. v. Ehlers 45 Wis. 293.]

4. Subsequent to the passage of the act of congress of June 30, 1864, to provide internal revenue, etc. (13 Stat. 223), the assistant-treasurer of the United States and treasurer of the branch mint at San Francisco, gave an official bond in pursuance of sections 6 and 7 of the act of August 6, 1846, to provide for the reorganization of the treasury, etc. (9 Stat. 60), and conditioned in the language of said sections; also referring to the act of May 23, 1850, providing for a bullion fund (9 Stat. 436), but not containing the conditions prescribed for stamp agents' bonds by section 170 of said act of June 30, 1864, and not making any reference to said act or duties; which bond was accepted by the secretary of the treasury: Held, that the sureties on said bond, given as assistant-treasurer and treasurer of the branch mint, are not liable for any default of their principal occurring in the performance of the duties of stamp agent, in pursuance of the provisions of said section 170 of said act of June 30, 1864.

At law.

A. P. Van Duser, U. S. Atty.

Latimer & Morrow, for defendants.

Before FIELD, Circuit Justice, and SAWYER, Circuit Judge.

SAWYER, Circuit Judge. This is an action on the official bond of D. W. Cheeseman, as assistant-treasurer of the United States, and treasurer of the branch mint at San Francisco.

The eighth article of the complaint alleges, as one breach, that the principal in the bond failed to account for a certain amount of internal revenue stamps supplied him for sale by the commissioner of internal revenue of the United States under authority of acts of congress. The defendants claim that there is no liability under the conditions of the bond and the statute, for any delinquency of the assistant-treasurer, as internal revenue stamp agent; that for this reason the deficiency alleged in article 8 does not constitute a breach in the condition of the bond, and that the matter alleged is therefore immaterial; and, on that ground, they move to strike it out in accordance with the practice under the State Code of Procedure. The bond sued on bears date July 2, 1864.

The act of August 6, 1846, provided for the appointment of assistant-treasurers of the United States at certain cities. 9 Stat. 60, § 5. Section 6 provides: "That the treasurer of the United States, the treasurer of the mint of the United States, the treasurers, and those acting as such, of the various branch mints, all collectors of the customs, all surveyors of the customs acting also as collectors, all assistant-treasurers, all receivers of public moneys at the several land offices, all post-masters, and all public officers of whatsoever character, be, and they are hereby, required to keep safely, without loaning, using, depositing in banks, or exchanging for other funds than as allowed by this act, all the public money collected by them, or otherwise at any time placed in their possession and custody, till the same is ordered, by the proper department or officer of the government, to be transferred or paid out; and when such orders for transfer or payment are received, faithfully and promptly to make the same as directed, and to do and perform all other duties as fiscal agents of the government which may be imposed by this or any other act of congress, or by any regulation of the treasury department made in conformity to law; and also to do and perform all acts and duties required by law, or by direction of any of the executive departments of the government, as agents for paying pensions, or for making any other disbursements which either of the heads of these departments may be required by law to make, and which are of a character to be made by the depositaries hereby constituted, consistently with the other official duties imposed upon them."

Section 7 provides that all the treasurers and assistant-treasurers named in the act "shall respectively give bonds to the United States faithfully to discharge the duties of their respective offices according to law."

On July 3, 1852, "An act to establish a branch mint of the United States in California" was passed, section 7 of which provides as follows: "That the said branch mint shall be the place of deposit for the public moneys collected in the custom houses in the state of California, and for such other public moneys as the secretary of the treasury may direct; and the treasurer of said branch mint shall have the custody of the same; and shall perform the duties of an assistant-treasurer, and for that purpose shall be subject to all the provisions contained in an act entitled 'An act to provide for the better organization of the treasury, and for the collection, safe-keeping, transfer, and disbursement of the public revenue,' approved August the sixth, one thousand eight hundred and forty-six, which relates to the treasurer of the branch mint at New Orleans."

The defendant, Cheeseman, was appointed treasurer of said branch mint, and as such gave the bond in suit. The condition of the bond follows the language of the said act of August 6, 1846, before cited, and will be set out in the course of this opinion.

It also adds "to be substituted for present bond of four hundred thousand dollars by virtue of act of May 23, 1850" (9 Stat. 436). This act relates to a bullion fund set apart to pay for bullion received at the mint before it is coined; and provides for the increasing of bonds of treasurers to cover the increased responsibility under the operation of the act. No reference is made in the condition of the bond in suit to stamps, stamp agents, or to

any other act of congress, than those just cited.

By the act of July 1, 1862, as one source of revenue, congress provided that certain merchandise and certain instruments should be stamped, with stamps to be furnished by the government; and by section 102 the commissioner was authorized to furnish any person such stamps upon payment of the amount of duty represented by such stamps less a commission of five per cent. when the amounts taken were fifty dollars or more. It also provided for the return of such stamps so furnished, as should become unfit for use, or for which the purchaser should have no use. 12 Stat. 477, § 102. This act was amended December 25, 1862, by which the commissioner of internal revenue was authorized to supply the assistant treasurer at San Francisco with stamps "without requiring prepayment therefor," provided, "that no greater commission be allowed than is now provided by law"—that is to say, no greater than was allowed private parties, who received stamps upon payment, as provided in the statute before cited. 12 Stat. 632, § 2.

On June 30, 1864, congress passed another act, which covers the whole subject of internal revenue taxation, and especially that portion relating to stamp duties. Section 173 of this act repeals by direct reference nearly all the acts upon the subject, and then adds a general clause, "together with all acts and parts of acts inconsistent herewith." Section 161 of this act, like section 102 of the act of July 1, 1862, authorizes the commissioner of internal revenue to supply any person with stamps upon payment of the amount represented less commissions allowed for selling, or otherwise. and for the return of those not used; and to supply certain designated manufacturers with stamps "without prepayment therefor, on a credit not exceeding sixty days," upon "such security as he (the commissioner) may judge necessary to secure payment," etc. Section 170 provides as follows: "That in any collection district, where in the judgment of the commissioner of internal revenue, the facilities for the procurement and distribution of stamped vellum, parchment, or paper, and adhesive stamps, are or shall be insufficient, the commissioner, as aforesaid, is authorized to furnish, supply, and deliver to the collector and to the assessor of any such district, and to any assistant treasurer of the United States, or designated depositary thereof, or any postmaster, a suitable quantity or amount of stamped vellum, parchment or paper, and adhesive stamps, without prepayment therefor, and shall allow the highest rates of commissions allowed by law to any other parties purchasing the same, and may in advance require of any such collector, assessor, assistant treasurer of the United States or postmaster, a bond with sufficient sureties, to an amount equal to the value of any stamped vellum, parchment or paper, and adhesive stamps, which may be placed in his hands and remain unaccounted for, conditioned for the faithful return, whenever so required of all quantities or amounts undisposed of, and for the payment monthly, of all quantities or amounts, sold or not remaining on hand. And it shall be the duty of such collector to supply his deputies with, or sell to other parties within his district who make application therefor, stamped vellum, parchment, or paper, and adhesive stamps, upon the same terms allowed by law, or under the regulations of the commissioner of internal revenue, who is hereby authorized to make such other regulations, not inconsistent herewith, for the security of the United States and the better accommodation of the public, in relation to the matters hereinbefore mentioned, as he may judge necessary and expedient. And the secretary of the treasury may from time to time make such regulations as he may find necessary to insure the safe-keeping or prevent the illegal use of all such stamped vellum, parchment, paper and adhesive stamps." 13 Stat. 297. § 170.

These are the only statutes brought to the attention of the court bearing upon the question presented by the motion to strike out. The bond in question was given after the passage of the last named act of June 30, 1864. This act clearly operated as a repeal of the act of December 25, 1862, although the latter act is not specifically referred to in the repealing clause. But the latter embraces the entire subject-matter of the prior act on this subject, making changes on the point in question and adding other provisions, and was manifestly intended as a substitute for it. In such cases it is well settled that the operation of the later act is to repeal the one for which it is substituted. Murdock v. City of Memphis, 20 Wall. [87 U. S.] 617; U. S. v. Tynen, 11 Wall. [78 U. S.] 88; Henderson's Tobacco. Id. 652; Bartlet v. King, 12 Mass. 537; Com. v. Cooley, 10 Pick. 37; Pierpont v. Crouch, 10 Cal. 315; Sedg. St. & Const. Law, 126; Butler v. Russell [Case No. 2,243]; Norris v. Crocker, 13 How. [54 U. S.] 438. The act of 1862, therefore, need not be considered.

The liabilities of sureties cannot be extended by implication or construction. The surety cannot be bound beyond the scope of his engagement. He is entitled to stand upon the strict terms of his contract. His liability is strictissimi juris, and cannot be extended beyond the reasonably necessary import of the language of his bond. Miller v. Stuart, 9 Wheat. [22 U. S.] 703; U. S. v. Boyd, 15 Pet. [40 U. S.] 207–209; Legget v. Humphreys, 21 How. [62 U. S.] 76; Morton v. Thomas, 24 How. [65 U. S.] 317; Smith v. U. S., 2 Wall. [69 U. S.] 235.

Is the default alleged in article 8 of the complaint fairly within the terms of the condition of the bond? The condition of the bond is in the language of the act of 1846.

which was passed long before there was any act relating to stamps in force. One of the conditions is in the language of section 7 of said act that the principal "shall truly and faithfully continue to execute and discharge all the duties of the said office according to the laws of the land." These duties were specifically defined by section 6 of the same act, and another condition of the same bond follows substantially the language of that section, and is, that "he shall truly and faithfully continue to execute and discharge all the duties of the said office, according to the laws of the United States, and moreover has well, truly and faithfully kept and shall well, truly and faithfully keep safely without loaning, using, depositing in bank or exchanging for other funds than as allowed by the act of congress hereinafter specially referred to and described, all the public money collected by him, or otherwise at any time placed in his possession and custody. till the same has been or shall be ordered by the proper department or officer of the government to be transferred or paid out; and when such orders for transfer or payment have been or shall be received, has faithfully and promptly made, and shall faithfully and promptly make the same as directed, and has done and shall do and perform all other duties as fiscal agent of the government. which have been or may be imposed by any act of congress, or by any regulation of the treasury department made in conformity to law; and also has done and performed, and shall do and perform all acts and duties required by law, or by direction of any of the executive departments of the government, as agent for paying pensions, or for making any other disbursements which either of the heads of these departments may be required by the law to make, and which are of a character to be made by a depositary constituted by an act of congress, entitled 'An act to provide for the better organization of the treasury, and for the collection, safe keeping. transfer, and disbursement of the public revenue,' approved August 6, 1846, consistently with the other official duties imposed upon him; then this obligation to be void and of none effect," etc.

The language of the statute and of the condition is very broad, but the words must be taken as having reference to such duties only as have some natural relation to the ordinary duties imposed upon the particular officer, who gives the bond. The language prescribing the duties is the same for "all collectors of customs, all surveyors of customs acting also as collectors, all assistant treasurers, all receivers of public moneys at the several land offices, all postmasters and all public officers of whatsoever character." All these officers are provided for in the same section. It can hardly be supposed that congress intended that the words "all other duties as fiscal agents of the government which may be imposed by this or any other act;"

in the section prescribing the duties of the officers mentioned and which is inserted in the treasurer's bond, in suit, should include the duties of collectors of customs, receivers of land offices and postmasters in case congress should, after giving the bond, see fit to impose the duties of such officers on the assistant treasurer.

If so, then the duties of all officers, who have anything to do with the moneys of the government, might be imposed on an assistant treasurer, and the liabilities of his sureties extended far beyond anything contemplated at the time of the execution of the bond. We think these words only intended to include such duties as naturally and ordinarily belong to the particular officer giving the bond, or have some obvious relation to such duties, and such as the sureties acquainted with the duties of the various public officers as usually devolved upon them by law, might reasonably be expected to contemplate at the time of executing the bond. as likely to be imposed upon their principal in case the exigencies of government should require it; and not those duties which are usually imposed upon, and more appropriately belong to, an entirely different class of officers. Thus the duties of treasurers are usually to keep safely, and pay out upon lawful authority the public moneys, not to act as collectors of customs, postmasters, receivers of land offices. or other officers engaged in collecting the different branches of the public revenues. Treasurers are ordinarily understood to be keepers of the public funds collected by other classes of public officers to whom those specific duties are specially assigned. We do not think the words of the treasurer's bond under consideration would cover the duties of collectors of customs, etc.. imposed by the act of congress or a regulation of the treasury department after the giving of the bond. The sale of stamps required by act of congress to be used upon certain specified merchandise and written instruments, is one mode of raising and collecting revenue; and the furnishing of stamps to the assistant treasurer for sale to other parties in pursuance of section 170 of the act of 1864, is but making him an agent for the sale of stamps. and collection to the extent of sales of that branch of the public revenue. The stamps themselves are not money. There is no natural or necessary connection of this service with the ordinary duties of that officer, as treasurer. The service is more appropriate to other officers. whose duties are to collect revenue, and it was at first imposed on that class of officers. Section 102 of the act of July 1, 1862, as has been seen. authorized the commissioner to "supply collectors, deputy collectors, postmasters, stationers and other persons (without naming assistant treasurers), at his discretion with adhesive stamps." etc.. "upon payment at the time of delivery" of the amount of duties "said stamps represent;" and to allow five

per cent. as commission, providing also for a return of such as were not used. Section 161 of the act of June 30, 1864, made a similar provision as to similar parties, the supply to be made upon payment, and, also authorized the delivery of stamps to certain manufacturers, without payment upon giving satisfactory security for payment within sixty days. Section 170 of the same act authorized the commissioner of internal revenue in those districts where in his judgment the facilities for distribution of stamps were insufficient, to furnish to the collector and assessor of the district, and to any assistant treasurer, or any postmaster, a suitable quantity of stamps "without payment therefor," and to allow the highest rates of commission allowed other parties purchasing the same; and provided that the "commissioner may in advance require of any such collector, assessor, assistant treasurer of the United States, or postmaster, a bond with sufficient sureties to an amount equal to the value of any stamped vellum, parchment or paper and adhesive stamps which may be placed in his hands and remain unaccounted for, conditioned for the faithful return, whenever so required, of all quantities or amounts sold or not, remaining on hand."

Thus it will be seen that under section 161, the stamps were to be supplied to certain officers and persons only on prepayment of the amount represented by the stamps, less commissions, to certain manufacturers on credit upon giving security, and under section 170 they might be supplied for sale on similar commissions to certain officers named without prepayment, in the discretion of the commissioner, but he was authorized to require security and the condition of the bond is prescribed. Some of the officers mentioned in both sections are the same, as postmasters and collectors. It seems to be a fair inference from these sections that congress intended that there should be in all cases either prepayment of the value less commissions, or special security given for the faithful performance of this particular duty.

Why require prepayment of collectors and postmasters in section 161, if their official bonds as collectors and postmasters already given covered the duty? or why authorize the supply of stamps to these same officers in section 170 of the same act, and require other special security, if it was contemplated that their bonds as collectors and postmasters already given protected the government? These officers, like assistant treasurers, give bonds for the faithful discharge of their duties which are prescribed by section 6 of the act of 1846. If the assistant treasurer's bond under that act covers the liabilities by reason of the provisions of section 6, the same must be true of the collectors' and postmasters' bonds. It seems very evident to us that congress intended that the specific bond authorized by section 170 of the act of 1864 should be given to cover the specific duty devolved upon the stamp agents provided for in that section, that is to say, when stamps are delivered without prepayment. The language is not that an "additional" bond shall be required, but that "a bond with sufficient sureties" may be required. If congress had contemplated that a bond as assistant treasurer should cover this duty, there would have been no need of this bond, or if it had supposed the bond already given insufficient, it would naturally have authorized an additional bond as in case of the bullion fund with a condition covering all duties instead of limiting the responsibility to that particular duty. The bond in question was given after the passage of the act of 1864, yet it does not contain the condition prescribed by section 170 to cover the duties of the assistant treasurer as stamp agent, and makes no reference to it. It does, however, refer, in terms to the act of 1846 and to the act of 1850 relating to a bullion fund, and purports to have been executed in pursuance of those acts. It seems to refer specifically to all duties intended to be covered. "Expressio unius est exclusio alterius." The parties executed the bond, and the secretary of the treasury accepted it in this form. If it was intended to cover the duties of the assistant treasurer, as stamp agent under the act of 1864, it is reasonable to presume that the secretary of the treasury would have required the conditions prescribed by section 170 to be inserted, or at least to have required some reference in the bond to those duties, or to that act. The secretary prescribes the form of the bond.

We think the reasonable conclusion is, that congress intended to require a distinct and separate bond containing the conditions prescribed in section 170 of the act of 1864, to cover the duties of stamp agents provided for in that act; that as the bond in suit was given since the passage of the act of 1864, and does not contain the conditions prescribed by that act, and makes no reference to the act, but only refers to the acts of 1846 and 1850, the sureties might have reasonably supposed, and were entitled to suppose, that another bond would be given to cover the service of stamp agent, should the commissioner exercise his discretion, and require that service of the person acting as assistant treasurer, and that their liabilities upon the bond were limited to the duties of assistant treasurer and treasurer of the mint, and such duties as usually pertain to that office, and as they existed under prior acts of congress; and that they are not liable on the bond in suit for the delinquencies set out in article 8 of the complaint.

The result is that the averments of said article are immaterial, and should be stricken from the complaint, and it is so ordered.