Davis, J.,
delivered tbe opinion of tbe court:
Tbe claimant seeks to recover in this action tbe sum of $185,-296.68, or such other sum as the' court may find to be due him, as commissions upon sales of internal-revenue stamps made by him while assistant treasurer at New York, between tbe 16th November, 1869, and tbe 22d July,' 1870. He maintains, tha tbe is entitled to these commissions under tbe provisions of tbe act of June 30,1864, sections 161'and 1,70. (13 Stat. L., 294, 297.)
Tbe defendants contend tbat tbe claimant was required by *92 law, as assistant treasurer, to perform tbe services for wbicli be now seeks compensation, and that tbe provisions of statute wbicb are consolidated in sections 17C3,1704, 1765, and 3597 of tb e Revised Statutes forbid tbe allowance of extra compensation therefor; and, further, that there is no provision of law for paying tbe sum claimed, or any sum, for such service.
The office of Treasurer of tbe United States was created by tbe fourth section of tbe act of September 2, 1789. His dirties were “to receive and keep tbe moneys of tbe United States and to disburse tbe same.
Tbe act of August 6, 1846 (9 Stat. L., 59), again defined tbe duties of tbe Treasurer (section 6), and provided for assistant treasurers, one of whom was to act in tbe city of New York, in rooms provided for tbe purpose and made part of tbe Treasury by tbe act, and was to have tbe custody of said rooms “ and of all tbe public moneys deposited within tbe same.” (Sec. 3.) He was also required to make transfers and payments of such moneys faithfully and promptly when ordered to do so, “and to perform all other duties as fiscal agent of tbe government wbicb might be imposed upon him by any act of Congress or by any regulation of tbe Treasury Department made in conformity to law”; and be was to perform all acts required by law or by direction of any executive department for paying pensions or making’ disbursements which any bead of a department is required to make, and wbicb are of a character to be made by him consistently with other official duties imposed upon him. Tbe salary of tbe assistant treasurer at New York was fixed, and it was not only provided that be should not be permitted to charge or receive any commission, pay, or perquisite for any official service of any character or description whatsoever, but it was made a misdemeanor, punishable, on conviction, by fine or imprisonment, or both, even to lay claim thereto.
In this connection it may be also said that by section 2, act of August 23,1842, it was provided that ‘ ‘ no officer in any branch of tbe public service, or any other person whose salary, pay, or emoluments is or are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for tbe disbursement of public money, or for any other service or duty whatsoever, unless tbe same shall be authorized by law, and tbe appropriation therefor explicitly set forth that it is for such additional pay, extra allowance, or compensation.”
*93 Tlie series of stringent statutes forbidding extra compensation to officers in government service lias been tlie subject of judicial construction in a number of decisions too well known to require detailed reference. Tlie bead of a department is not authorized to require a salaried subordinate to perform duties not germane to those imposed upon him bylaw. If, however, the subordinate performs such duties, he will not be entitled to extra Compensation therefor, unless such extra compensation is definitely authorized by statute. If it be thus definitely authorized, then the subordinate performing the extra service, foreign to his official duties, will be entitled to receive therefor the compensation named in the statute, in addition to .the pay which he receives by law or regulation for the performance of the ordinary duties of Ms office. The decision in'this case must be governed by these principles.
The act of 1816 made the assistant treasurer an officer in the Treasiuy. The duties imposed upon him by the act are to be construed with reference to the objects wMch Congress had in view in establisMng the Treasiuy. The Treasiuy Department embraces within its functions tl^e collection as well as the custody and disbursement of revenue. The Treasiuy itself is the machinery placed at the disposition of the Secretary for the performance of the latter class of duties onfy.
It is argued that the use of the word “ fiscal,” in the act of 1846, enlarges the scope of the duties of an assistant treasurer, so as to authorize the Secretary -of the Treasury to impose upon him duties connected with the collection as well as with the custody and disbursement of revenue. The word “fiscal” occurs in the sixth section of the act.. That section provides in a single sentence for the performance of the duties of various classes of offices, each quite inconsistent with the others, and the adjective “ fiscal” is applied to'all indiscriminately. It is more reasonable, therefore, to construe it as referable to the fiscal duties of each officer within official limits defined by law.
Hence, it must be assumed that the act of 1846 did not authorize the Secretary of the Treasiuy to'require the assistant treasurer at New York to collect revenue as well as to keep and disburse it. Was any such authority conferred upon the Secretary by the act of 1864 ?
Section 161 of that act authorized the Commissioner of Internal Bevenue to sell adhesive stamps to collectors, deputy col- *94 lectora, postmasters, stationers, or any other persons, in amounts of not less than $50, upon receipt of payment for the same, and in each case to allow to purchasers commissions upon the aggregate amount of purchases, not to exceed 5 or 10 per cent., according to the kind of stamp. It was evidently the object of this provision to put stamps within reach of persons in all sections of the country by means of direct sales from the office of the Commissioner of Internal Revenue. For this purpose Congress, by offering a bonus of a percentage, sought to make it an object to stationers and other retail dealers to purchase stamps in amounts of not less than $50 as they would buy other articles of merchandise; and waived the general restraining statutory provisions, already referred to, in favor of collectors, deputy collectors, and postmasters (which classes of officers were found in all sections of the country and in contact with all classes of people), in order to induce them also to deal in stamps.
In a subsequent section (section 170) Congress further provides for the distribution of stamps, by authorizing it to be done through the instrumentality of certain public officers, without prepayment for the same. The provisions of this section which are material in this case are the'following: “In any collection-district where, in the judgment of the Commissioner of Internal Revenue, the facilities for the procurement and distribution of stamped vellum, parchment, or paper, and adhesive stamps are or shallbe insufficient, the Commissioner is authorized to furnish, supply, and deliver to the collector and to the assessor of any such district, and to any assistant treasurer of the United States or designated depositary thereof, or any postmaster, a suitable quantity or amount of stamped vellum, parchment, or paper, and adhesive stamps without prepayment therefor, and shall allow the highest rate of commissions allowed by law to any other parties purchasing the samel7
It will be seen that this section does not, in words, impose upon an assistant treasurer the obligation to receive and sell stamps; but we must not necessarily assume that he has the right to decline such a duty, if imposed upon him by his official superior. Such a construction would practically nullify these provisions of the act, and throw out of gear the machinery provided by Congress for placing the stamps within the reach of those who were required to use them. It is more rational to assume that it was intended by section 170 to empower the *95 Secretary of tbe Treasury to require an assistant treasurer to sell revenue-stamps. Sucb was, in fact, tbe practical construction put upon tbat section by .tbe Treasury Department when tbe statute was put in operation.
There was no hardship in requiring an officer like tbe claimant to perform sucb duties. His official staff was a creature of law, annually fed by means of appropriations. No burdensome personal duty was thrown upon him; nor was bis relative responsibility greatly enlarged. Stamps came to him only and in sucb quantities as they were needed for sale. As they w,ere sold, be passed tbe proceeds -in bis own office to tbe credit of tbe Treasury, without handling them. Tbe same process would have taken place bad tbe sales been made by another agent, and had the money been paid in. to tbe assistant treasurer under general provisions of law.' In either event be would have become, in bis capacity as assistant treasurer, tbe custodian of tbe money after tbe sale of the- stamps. In this custody of money was bis real responsibility.
Tbe claimant entered upon tbe duties of bis office in 1869, five years after tbe act of 1864 went' into effect. If tbe views which have been expressed are correct, be assumed, in taking office, to perform tbe duties imposed upon tbe assistant treasurer by tbe act of 1864 as fully as be undertook tbe performance of those imposed by tbe act of 1846. Was be entitled to extra compensation for tbe services rendered .under tbe later statute ? He maintains tbat tbe act of 1864 explicitly and in fall comformity with tbe requirements of tbe act of 1842 sets forth tbe additional pay, extra allowance, and compensation which be ought to receive, and tbat they are tbe stun demanded in this suit.
Tbe one hundred and seventieth section of tbe act of 1864 directs tbe Commissioner of Internal Bevenue to allow on sales made in tbe manner required by tbat section a commission which, by referring to tbe provisions, of section 161, is found to be 5 per cent, on sales of common stamp's and 10 per cent, on sales of proprietary stamps. It is not stated in tbe statute to whom tbe commissions named in section 170 are to be allowed. Tbe claimant contends tbat in bis ‘ case tbe commissions should be allowed to him, and cites in support of bis proposition two decisions by courts of high authority. (United States v. Cheeseman, 21 Int. Rev. Rec., 340; United States v. Butterfield, 7 Benedict, 412.) If tbe court in New York has correctly interpreted tbe *96 act of 1864, tbe claimant’s position is well taken, and it will be onr duty to allow to him so much of said commission as may not already hare been allowed to kim under tke provisions of tke act.
Section 161 provides for tke absolute sale of stamps, in amounts of $50 or more, to tke following classes of officials, viz, collectors and postmasters. It also provides for similar sales to deputy collectors and sundry classes of non-official persons. All piu’ckasers, of wkatever class, are to receive a commission on tkeir purchases, at tke discretion of tke Commissioner, but in no event to exceed 5 per cent, on purchases of common stamps and 10 per cent, on purchases of proprietary stamps.
Among tke classes of officials affected by tke provisions of section 170, we again find collectors and postmasters enumerated. This section contemplates tkat tkey are to be made de-positaries of stamps for tke purpose of selling tkem to otkers, and tkey are not required to pay for tkem, unless sold, or unless not returned to tke Commissioner of Internal Revenue wken called for. It is witk reference to sales under this section tkat tke Commissioner is required to'. “ allow tke kigkest rate of commissions allowed by law to any otlier parties purchasing tke same.” If tke claimant’s construction is correct, tke Commissioner must allow postmasters and collectors 5 and 10 per cent, on sales of common and proprietary stamps, respectively, made through tkeir agency, while he may allow tkem less than, suck percentages on pimckases of tke like stamps, kx like amounts, by themselves. It does not seem probable tkat Congress intended in tke same act to offer tke same party tke greater compensation for the lesser service performed witk reference to tke same thing.
The more probable and tke more natural construction of tke provisions of tke statute is this: Tkat Congress intended by section 161 to authorize officers purchasing stamps in tke required quantities, and who otherwise could not accept a commission for doing so, to receive tke same bonus which tke statute authorized to be paid to other purchasers; and further intended by section 170, in case tke machinery provided by section 161 should prove inadequate to place stamps within reach of consumers, then to carry tke internal-revenue office itself into every district, by making tke officers named in section 170 tke agents of tke Commissioner to sell stamps to the classes of officers and *97 to tbe other persons named in section 161. Sales are to be made by tbe agents as if made by tbe Commissioner himself, and commissions are to be allowed to tbe actual purchaser just as commissions are allowed to tbe actual purchaser under section 161. Tbe rate of tbe commision may be varied, but none of it goes to tbe government official. In this way tbe apjiarent conflict between tbe two sections of tbe act of 1861 is removed, and proper force is given to tbe words “ other parties purchasing tbe same.”
Hence we find ourselves constrained to disregard tbe weighty authorities referred to by tbe claimant, in so far as they are opposed to our conclusions, and to bold that no statutory provision is made for tbe payment of a commission to tbe classes of officers named in section 170. Tbe claimant’s right to compensation is therefore controlled by tbe statutes forbidding him to charge or receive any commission, pay, or perquisite for any official service of any character or description whatsoever, or to receive any additional pay, extra allowance, or compensation for any service whatsoever.
This conclusion mates it unnecessary to consider tbe other points discussed at the bar.
Tbe claimant’s petition must therefore be dismissed.