# CASES

## IN THE

# SUPREME COURT OF ALABAMA.

### DECEMBER TERM, 1876.

## Morrow *et al. v.* Wood.

*Action by County Superintendent, on Official Bond of County Treasurer.*

1. *Official bonds; who may sue for breach.*—An official bond, conditioned for the faithful performance of official duty, is not a "contract for the payment of money," within the statute (Rev. Code, § 2523) requiring actions on such contracts to be brought in the name of the party really interested.

2. *Same.*—The statute which authorizes an action "for the breach of any official bond or undertaking of any officer of this State," "or of any bond or undertaking given in an official capacity to the State of Alabama or any officer thereof," to be brought by "the person aggrieved" in his own name (Rev. Code, § 2552), being a remedial statute, and therefore construed liberally, includes the official bond of a county treasurer, although such bond is payable to the county; and the county superintendent of education, being authorized and required to receive and collect from the treasurer all school moneys belonging to the county, is the "person aggrieved" by the treasurer's default in not paying over such moneys.

3. *County superintendent; authority and duty to collect county school funds.*— The act approved March 19, 1875 (Sess. Acts 1874-5, p. 56), authorizing and requiring the county superintendent to receive and collect from the county treasurer all the school moneys in his hands belonging to the county, applies to county treasurers whose term of office had expired before its passage, and who had failed to account for the school moneys which they had received.

4. *Official bonds; condition, and liability of sureties.*—It is competent for the legislature, in exacting official bonds, and prescribing their conditions, to require that they shall be conditioned for the faithful performance of all duties that may be imposed by subsequent statutes during the officer's continuance in office; and this having been done by a general statute (Rev. Code, § 169), the sureties on an official bond, conditioned as required by the statute, are liable for their principal's default in reference to additional duties subsequently imposed, unless the statute imposing such duties shows an intention that they shall not be so liable.

5. *County treasurer; liability of sureties on official bond, for school moneys received under subsequent law.*—The act approved April 19, 1873 (Sess. Acts 1872-3, p. 6), providing, by its 7th section, that "before any money shall be

[Morrow et al. v. Wood.]

paid over to the county treasurer under this act, such treasurer shall increase his official bond, to such an amount as shall be authorized by the superintendent of public instruction, so that said increase will amount to at least double the sum of money that may be brought into his hands at any one time by the provisions of this act, and said bond shall bind said treasurer to the faithful performance of his duties under this act, and shall be approved by the probate judge of said county,"—shows a legislative intent to require from the treasurer a new bond for the faithful performance of the new duties imposed by that act; consequently, the sureties on his general bond as county treasurer, executed before the passage of that act, are not liable for his default in not paying over such moneys, although in fact he gave no new bond.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. W. B. WOOD.

This action was brought by William M. Wood, as county superintendent of education of Morgan county, against William A. Morrow, late county treasurer of said county, and Samuel M. Morrow and William Morrow, sureties on his official bond as such treasurer; and was commenced on the 29th March, 1876. The said bond was executed and dated on the 11th November, 1871, and was conditioned as follows: "Whereas, the above-bound William A. Morrow was, on the 7th day of November, 1871, duly elected by the qualified voters of Morgan county, Alabama, at an election held on that day, county treasurer for said county of Morgan, for the term prescribed by law; now, if the said William A. Morrow shall faithfully discharge all the duties which are or may be by law required of him as such county treasurer, during the time he continues in such office, or discharges any of the duties thereof, then this obligation to be void," &c. The complaint alleged, as a breach of this bond, that the said William A. Morrow, as county treasurer, had received and collected from the tax collector of the county, during the years 1873 and 1874, the sum of $750, belonging to the public school moneys of the county, which he failed and refused to pay over to the plaintiff, on demand, after the 19th March, 1875. The defendants demurred to the complaint—1st, because it showed no right of action in the plaintiff; and, 2d, because it showed no liability on the part of the defendants on the bond sued on. The court overruled the demurrer, and the defendants then pleaded, "in short by consent," 1st, the general issue, with leave to give in evidence any special matter of defense; 2d, that the plaintiff showed no right of action in himself to sue for moneys which came into the hands of said William A. Morrow, as county treasurer, prior to the 19th March, 1875; 3d, that said William A. Morrow's term of office, as county treasurer, expired in November, 1874, and his sureties were only liable for the faithful performance of the duties imposed on him by law during his term of office; 4th, that there was no authority of law for

[Morrow et al. v. Wood.]

paying over any county school moneys to him, under the act approved April 19, 1873, because he never gave a new bond, as required by that act, and the sureties on his former bond were not liable for any moneys received by him without authority. The court sustained a demurrer to the 2d, 3d, and 4th pleas; and the cause was tried on issue joined on the 1st plea. There was a verdict and judgment for the plaintiff, under the charge of the court. The rulings of the court on the pleadings, and in the charges given and refused, to which exceptions were reserved by the defendants, and which involved the same legal questions as the pleadings, are now assigned as error.

J. B. MOORE, for the appellants.—1. The plaintiff had no right to maintain this action, under the act of March 19, 1875. Long before the passage of that act, W. A. Morrow had ceased to be county treasurer; and the act shows on its face that it was not intended to have a retrospective operation. If it could retroact on treasurers who had gone out of office six months before its passage, it could, with equal propriety, retroact for ten years, or more.

2. Prior to the passage of the act approved April 19, 1873, a county treasurer had no authority to collect or receive school moneys. That act expressly provides, by its 7th section, that the treasurer shall give a new bond before he can receive any money under its provisions. If the treasurer, in this case, had given a· new bond, the sureties on that bond would alone have been responsible for any default as to the school moneys received by their principal; and no bond having been given in fact, his receipt of the school moneys was without any legal authority, and the sureties on his general bond are not liable for its proper application. It is not attempted to deduce the liability of the sureties from the failure of their principal to give a new bond : the complaint does not contain the proper averments for that purpose; but the effort is to hold them responsible for money which their principal received without authority of law, and failed to account for, as for a breach of his official bond.

RATHER & SHARPE, contra.—1. The county superintendent is the legal custodian of all school moneys belonging to the county, and the only person who is authorized to receive and collect them. The power to collect involves· and implies the power to collect by suit.—Yerby v. Sexton, 48 Ala. 311.

2. The bond sued on is an official bond, and its legal effect, as declared and defined by the statute (Rev. Code, § 169), makes it obligatory upon the sureties, "for the faithful dis-

[Morrow et al. v. Wood.]

charge of any duties which may be required by any law passed subsequently to its execution." The failure of the treasurer to give a new or additional bond, as required by the 7th section of the act approved April 19, 1873, was a breach of official duty on his part; and neither he nor his sureties can claim any advantage on account of his own wrong. He may have received the money without any legal authority, but he certainly received it under color of his office, and while discharging the duties of his office. The tax collector was bound to pay him the money, whether he increased his bond or not; and would have been liable to a penalty, if he had failed to do so.

BRICKELL, C. J.—The first proposition, to which the argument of counsel for appellants has been directed, is, that a county superintendent of education has not authority to sue a defaulting county treasurer, for the recovery of the poll tax received by him from the tax collector, or the portion of the State tax which the tax collector has paid to him, and which formed the school fund of the county. If he has such authority, and sues on the bond of the treasurer, the suit must be prosecuted in the name of the county, the obligee of the bond, for his use, and not in the name of the superintendent in his official capacity only. We propose to consider, first, the last branch of the proposition.

The rule of the common law was without exception, that actions on contracts, whether for the payment of money, or the performance of a duty—whether express or implied; by parol, or under seal, or by matter of record—must be prosecuted by the party having the legal title, irrespective of equitable or beneficial interests. As a general principle, if the express terms of the contract did not vary it, the legal title and interest resided in the party with whom the contract was made, or to whom the promise was made. Official bonds, of statutory creation, taken as a security for the performance of official duties, and indemnity to the State, or the citizen, against damage from official misfeasance, malfeasance, or nonfeasance, were made payable to the State, the county, or a public officer; and actions thereon, by a party aggrieved by official delinquency, were authorized. Such actions, if not otherwise prescribed by statute, were maintainable only in the name of the obligee, for the use of the person aggrived, who was entitled to the recovery.—*Governor v. Gantt*, 1 Stew. 388; *Perkins v. Moore*, 16 Ala. 9; *Chaudron v. Fitzpatrick*, 19 Ala. 649.

The Code has wrought radical changes in these common-law principles. Actions founded on promissory notes, bonds,

Vol. LVI.

[Morrow et al. v. Wood.]

or other contracts, express or implied, for the payment of money, must be prosecuted in the name of the party really interested, whether he have the legal title or not.—R. C. § 2523. By its terms, this provision is limited to contracts for the payment of money, and as to such contracts only varies the rule of the common law.—*Henley v. Bush*, 33 Ala. 636; *Smith v. Harrison, Ib.* 706. The bond of the county treasurer, on which this suit is founded, is not, in any just sense of the term, a *contract for the payment of money.* It is essentially, in terms, in operation, and in legal effect, a contract for the performance of official duty, becoming void on the performance of such duties; and if its condition is broken, a recovery upon it is for damages commensurate with the breach.—*Skinner v. Bedell*, 32 Ala. 44. This suit cannot, therefore, be maintained by force of this section of the Code.

2. There is another section, in which, if authority can be found to sustain the suit in its present form, it must be found; proceeding, for the present, on the supposition, that the county superintendent has authority to sue for the default of which complaint is made. The section reads as follows: "For any breach of any official bond or undertaking of any officer of this State, executor, administrator, or guardian, or of any bond or undertaking given in an official capacity to the State of Alabama, or any officer thereof, the person aggrieved may sue in his own name, assigning the appropriate breach."—R. C. § 2552. This section is remedial; and when it is compared with the pre-existing law, its purpose is unmistakable. It was intended that suits on official bonds, or the bonds of an executor, administrator, or guardian, should be prosecuted by the party really aggrieved, in his own name, dispensing with the mere form, which obedience to the rule of the common law required,. of introducing on the record, as nominal plaintiff, the obligee of the bond, who had no right or interest involved, and who could not control the suit—who was not answerable for costs, and could not release or discharge the recovery. The bond of a county treasurer, he being peculiarly an officer of the county, as distinguishable from an officer of the .State, payable to the county, and not to the State, or an officer thereof, may not be within the words of the section, if they are taken in a narrow or a strict sense. The section is remedial, and is part of a system of pleading, in which there is a clear intention to require the prosecution of suits in the name of the party having the beneficial interest—the right to receive, release, or discharge the recovery—and against whom defenses arising from his acts or admissions can be made, dis-

pensing with the unnecessary involvement of introducing the party having the dry, naked, legal title, merely as the result of the statutory requisition that the bond should be payable to him. The words of the section must be construed liberally, so as to accomplish the purpose of its enactment, and advance the remedy.—*Sprowl v. Lawrence*, 33 Ala. 674. The bond of a county treasurer, when the subject of a suit by an individual aggrieved by his official delinquency, is as much within the mischief the section proposes correcting, as the bond of a sheriff, or a probate judge; and it is not a strained construction to read the words as embracing it, or the bond of any public officer.

3. This brings us to the inquiry, is the county superintendent of education, within the meaning of the section, "*the party aggrieved*" by the failure of the county treasurer to pay over the poll tax, and other moneys received by him as the school fund, from the tax collector? Without now inquiring what were the powers or duties of county superintendents, in respect to the school fund of the county, prior to the act of March 19, 1875 (Pamph. Acts 1874-5, p. 56), the 8th section of that act confers on them full authority to receive, and imposes the duty of collecting from the county treasurer, all school moneys in his hands at the time of its enactment, and all he should thereafter receive. It is insisted the act has reference only to the county treasurers then in office, and who should subsequently come into office, and not the county treasurers whose term of office had ceased, and who had not accounted for school moneys they had received. The purpose of this act was to transfer to the county superintendent the custody and disbursement of the school fund, which, under the act of April 19, 1873, had been intrusted to the county treasurer. It was intended to transfer to a county officer, whose duties appertained exclusively to public instruction, the school fund, keeping it separate and distinct from all county moneys, rendering it impossible to mingle it therewith; an officer under the supervision and control of the superintendent of public instruction, and removable by him for infidelity or incompetency in the performance of his duties. The act is not, as supposed, retroactive in its operation, if applied to county treasurers whose term of office had expired, and who had not accounted for the school fund they had received. They were bound to account for such fund, and the act designates the officer to whom they can properly, and must make payment. No reason has been assigned for limiting it in operation, so as to exclude delinquent county treasurers whose term of office had expired; and if such limitation was recognized, the act

[Morrow et al. v. Wood.]

would be ill adapted to the purpose of its enactment. The county superintendent had authority to receive the funds which were in the hands of the appellant Morrow, received by him while county treasurer, though his official term as treasurer had expired before the passage of the act of March 19, 1875. It was vain to confer on the county superintendent this authority, if he has not capacity by suit to compel submission to it. Of necessity, in the administration of government, special power must be conferred, and special duty imposed on officers. The power must be exercised; the duty must be performed; the public welfare demands the exercise, and the performance. Hence, it is a very general principle of the common law, that public officers, though not expressly authorized by statute, have a capacity to sue, commensurate with their public trusts and duties.—*Overseers of Pittstown v. Overseers of Plattsburgh*, 18 Johns. 407; *Supervisor of Gulway v. Stimson*, 4 Hill, 136; *Looney v. Hughes*, 26 N. Y. Rep. 514. The suit was correctly instituted by the appellee, in his official capacity of county superintendent. He was the party aggrieved, within the meaning of section 2552 of the Code.

4. The important question of the case is, whether the sureties on the general official bond of the treasurer, executed prior to the statute giving him authority, and imposing on him the duty, to receive from the tax collector the poll tax and other moneys forming the school fund, are liable for his defaults in reference to this fund. There can be no doubt of the general principle, that sureties have the right to stand on the terms of their contract, and that no change in it can be wrought without their consent. Subsequent distinct agreements may be made between the principal and the creditor; but they have no influence on the liability of the surety, unless prejudicial to his rights and interests, and their effect then may be to discharge him. If the engagement of suretyship relates to a particular office, with prescribed duties, it extends only to such duties as are prescribed when the engagement is entered into, and not to such as may be subsequently attached to the office.—1 Chit. Con. 765, *note* (11th Am. ed). The cases usually referred to, in illustration, are *Bartlett v. Attorney-General*, Parker, 277; *Bowdage v. Attorney-General, Ib.* 488; in which a surety for a collector of the customs revenue, upon his appointment in 1691, was held not liable in respect of the custom on coal, which was first imposed in 1698. Statutory official bonds must be read and construed, in determining the extent of their obligation, and the liability the sureties thereon assume, in connection with the statutes which create the office,

[Morrow et al. v. Wood.]

define its powers and duties, authorize the execution of such bonds, and appoint the conditions to which they are subject. It is competent for the legislature to prescribe that such bonds shall operate a permanent, continuing liability, for all duties which under subsequent laws may be attached to the office, as well as for such duties as are attached when the bond is executed. When such declaration is made, the sureties entering into the bond assume liability, not only for the performance of the specific duties attached to the office when their engagement is entered into, but also such as may be attached during the official term of their principal. The interest and convenience of the community frequently require changes in the duties of public officers—an enlargement or diminution of their sphere of duty. Perplexing questions had often arisen, as to the liability of the sureties on their bonds previously executed, by reason of such changes; and to the injury of the citizen, sureties had escaped liability for the defaults of their principal, in the performance of duties imposed on him subsequent to their engagement. To avoid this evil, it is now declared, " Every official bond, executed under this Code, is obligatory on the principal and sureties thereon : 1. For any breach of the condition during the time the officer continues in office, or discharges any of the duties thereof. 2. *For the faithful discharge of any duties which may be required of such officer by any law passed subsequently to the execution of such bond, although no such condition is expressed therein.*"—R. C. § 169. Throughout the Code the same purpose prevails, of rendering bonds required by law operative and valid as a security for the performance of present and subsequent duty. The condition of the bond of an executor or administrator is, " to perform all the duties which are or may be required of him by law;" and similar is the condition of a guardian's bond.—R. C. §§ 2003, 2417. A surety, executing such bond, voluntarily assumes liability for his principal, according to the obligation of the bond as the law defines it; and changes in the duty of the principal are not an alteration of his engagement. There can be no doubt the sureties on the original bond of the treasurer are liable for his defaults in respect to the school fund, which it was subsequently made his duty to receive and disburse, unless the statute imposing the duty excludes the liability.

5. The 7th section of the act of April 19, 1873, which conferred the authority on the treasurer, and which was of force when the money was received it is now sought to recover, reads: "That before any money shall be paid over to the county treasurer under this act, such treasurer shall increase

his official bond, to such an amount as shall be authorized by the superintendent of public instruction, so that said increase will amount to at least double the sum of money that may be brought into his hands at any one time by the provisions of this act; and said bond shall bind said treasurer to the faithful performance of his duties under this act, and shall be approved by the probate judge of said county; and a copy of said bond, certified by the probate judge, shall be forwarded to the superintendent of public instruction."— (Pamph. Acts 1872–3, p. 6). It is a question not without difficulty, to determine whether the legislature intended to require from the treasurer merely an additional bond, cumulative to his general official bond, with an increased penalty, sufficient to cover any default he might commit in the performance of the duties enjoined by existing laws, and any default committed in the performance of the new duties the act imposed; or whether they intended to require a new and independent security for the performance only of those new duties. Neither the one nor the other intention is so clearly and satisfactorily expressed, that it can without hesitancy be affirmed. After the best consideration we can give the question, we have reached the conclusion, the latter was the intention; and that before the poll tax, or any part of the school fund, could be rightfully paid to the treasurer, the new and independent bond must have been executed and approved. By the terms of the act, it will be observed, it is contemplated the treasurer shall increase his bond, before any money is paid to him under its provisions; and the increase is to be sufficient to protect against loss because of his defaults in respect to the school fund—not because of default in the performance of his official duty generally. All the statutes in reference to official bonds, or bonds taken in the course of judicial proceedings, require the penalty to be double the amount of the actual liability which probably may be incurred. The penalty of the general bond of the county treasurer is double the amount of the probable annual county revenue. It is fixed on that basis, on the fact, which could not escape legislative recognition, that the current revenue could not, and would not, remain in the custody of the treasurer—it would be disbursed in payment of demands on it, almost as it was received; and that no default could be committed, which the prescribed penalty would not cover. If there was a necessity for an increase of the penalty of the bond, the power of the Commissioners' Court was plenary to compel it. An excessive penalty, not required by public interests, would be unjust and oppressive. Protection, indemnity against loss, because of official infidelity, is

[Morrow et al. v. Wood.]

the full measure of right and justice. The penalty of the bond required by the act under consideration, is different from that which the law requires for the general bond of the treasurer; and yet it is adequate, not oppressive to the treasurer, and conforms to the general legislative policy, in being double the amount of any probable damage because of delinquency in the duty imposed. Is it not a just conclusion, that the legislature intended a new and independent security for the performance of this new duty, and did not intend it should be imposed on the sureties to the general bond of the treasurer? Embarrassing questions might arise, resulting in the loss of the fund intrusted to the treasurer. The sureties on the general bond might be compelled to pay its penalty, because of the treasurer's default in the performance of pre-existing duties. They could not be compelled to answer further, if defaults were committed in respect to this particular duty and fund. An increase, an augmentation of the penalty of the bond, it is certain, was intended. If this was all which the act required—if there were not other words, limiting the condition of the bond, and the liability of those joining in its execution—additional or cumulative security, it might be supposed, was sufficient, and was the character of the new bond, or the bond increased. But the extent of the obligation of the new bond is defined. It is not, as is the obligation of the general bond, for the performance of all official duties, but for the faithful performance of the duties the act imposes. If the superintendent of public instruction, or the probate judge, had prepared the new bond for execution, must he not, of necessity, have referred to the act under which it was taken, and have expressed as its condition that which the statute expressed—the faithful performance of the duties the act imposed? The bond may have been valid as a common-law obligation, though not written according to the terms of the statute; yet, it would be a valid security only to the extent authorized by the statute. If the new bond had been executed, and the treasurer had faithfully performed all the new duties, but was guilty of defaults in the performance of his general duties, for those defaults the sureties on the new bond would not be answerable. The sureties on his general official bond must alone respond to such defaults. It seems manifest, the purpose was to withdraw the liability and duty of the treasurer, under this act, from the operation of the general official bond, and to require a new and independent security, with a specific condition for the faithful performance only of the new duty. The general bond may have been ample in security and penalty, and its general condition, as defined and declared by law, would

have obliged the performance of the new duty. Such was the character of the condition, not by force of the terms, but because of the intendment and implication the law declared should follow them. The intendment and implication can not arise, in the face of the act requiring a new bond, with a condition expressing the liability that would be intended, imposing that liability on others, and requiring it should appear by another instrument. The maxim, *Expressum facit cessare tacitum*, is of very general application in the construction of contracts of every character, rendering ineffective implied, in the face of express conditions.

If the new bond had been given, there would have been no community of burden—no relation whatever between the sureties on it and the sureties on the original bond. They would not have been bound for the performance of the same duties, but by separate instruments, for the performance of distinct duties. Contribution could not have been compelled by the one sustaining loss, from the other, who had not entered into the engagement which was broken.—1 Leading Cases in Eq. 156–7. The act contemplating and requiring from the treasurer a new bond, as a distinct, independent security for the performance of the new duties it imposes, with a condition limited to a violation of such duties, and a new and different penalty, the sureties on his general bond are not liable for his defaults in respect to these new duties. *State v. Bradshaw*, 10 Iredell, 229; *Crumpler v. Governor*, 1 Dev. 52; *Governor v. Barr, Ib.* 65; *Same v. Mattock, Ib.* 214.

Sureties on official bonds guaranty only the performance of official duty. For the acts or transactions of the principal without the line of his duty, and not under color of office, they do not engage. If no statute had been passed imposing on the treasurer the duty of receiving from the tax collector the poll tax and other school moneys, a payment of them to him would have been unwarranted, not discharging the collector from liability.—*Governor v. Walker*, 22 Ala. 118; *Van Dyke v. State*, 24 Ala. 81. The receipt of such moneys by the treasurer would have imposed no liability on his sureties. The legislature does not confer on the treasurer an absolute, unconditional authority to receive these moneys. The authority is conditional, and so is the duty of payment. The authority and duty, by the express words of the act, are dependent on the execution of the bond required. Before any part of the money can be paid, the treasurer must have increased his official bond; and the bond can not be increased, until the superintendent of public instruction, having the means of knowing the extent to which it ought to be increased, has prescribed the amount or penalty. It is pub-

[Beckwith v. Carroll.]

lic policy that public offices shall be filled, and that he who assumes to act as a public officer shall be held to accountability as such. The courts have been liberal in construing statutes requiring from such officers the execution of bonds for the performance of duty, as directory, not as fixing conditions precedent, on which official liability depended. But the question we are considering is different. A public office is filled; an official bond, conforming to law, has been executed and approved; a new duty is attached, and a new authority is conferred. In express terms, the law requires, as a condition on which the authority can be exercised, a particular act to be done; and that act is essential to secure the performance of the duty. If the act had, in express terms, inhibit‚d the treasurer from receiving the school moneys, until the execution of the bond required, it would not be insisted that his receipt of it would have fixed liability on the sureties on his existing official bond. Such receipt would have been as unwarranted, as if authority to receive had not been conferred; it would not have been an official duty. Fairly interpreted, the words of this act are an inhibition against a payment to the treasurer, until the bond was increased as it required; and a payment before such increase is without authority of law.

The result is, the Circuit Court erred in holding that a recovery could be had on the original or general bond of the treasurer, for his defaults in not accounting for any school money the tax collector may have paid to him.

The judgment, for this error, must be reversed, and the cause remanded.