# Brewer *v.* King's Sureties.

*Summary Proceeding on Tax-Collector's Official Bond.*

1. *Tax-collector's official bond; liability of sureties.*—The general law of 1868, regulating elections, required a tax-collector to be elected, in each county, on the first Tuesday after the first Monday in November, 1871, "and every three years thereafter," but did not expressly declare when their term of office should begin or end. The subsequent statute of December 17, 1873, "relating to the term of office of the several tax-collectors," after providing that collectors thereafter elected should enter on the discharge of their duties on the second Monday in April next succeeding their election, further enacted "that the term of office of the several tax-collectors now in office *shall continue until the second Monday in April,* 1875 ; *provided,* that such tax-collectors shall execute bonds, with sufficient sureties, in the form now prescribed by law, for the faithful discharge of their duties as such during their respective terms of office as hereby extended." *Held,* that the sureties on the official bond of a collector who was elected in 1871, and who did not give a new bond under the act of 1873, were not liable for a default of their principal committed during the interval between November, 1874, and April, 1875. (BRICKELL, C. J. *dissenting,* held that the sureties were liable under the general law declaring the legal effect of official bonds [Code, § 179], which declares that an official bond is obligatory on the principal and his sureties, "for any breach of the condition during the time the officer continues in office, or discharges any of the duties thereof," and "for the faithful discharge of any duties which may be required of such officer by any law passed subsequently to the execution of such bond.")

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. J. Q. SMITH.

This was a statutory proceeding, by notice and motion, for a summary judgment against John R. King, and the sureties on his official bond as tax-collector of Sanford (now Lamar) county ; and was instituted by Willis Brewer, as State Auditor, on the 14th September, 1877. Said King was elected tax-collector of Lamar county, at the general election in November, 1871 ; and his official bond, which was conditioned as required by law, and regularly approved, was dated the 20th November, 1871. The proceeding was discontinued as to King himself, and also as to several of the sureties who were not served with process, and prosecuted only against those who had been legally notified. The defendants pleaded the general issue, and did not demand a trial by jury. The plaintiff proved on the trial, as appears from the bill of exceptions, that the said King had failed to account for and pay into the State treasury moneys amounting to $1,111.55, which he had collected as such tax-collector. "The defend-

ants introduced testimony tending to show that said King had lawfully accounted for all the taxes collected prior to the first Tuesday after the first Monday in November, 1874; that after said first Tuesday in November, 1874, when his successor in office was elected, he continued to collect taxes from the citizens of said county; that the taxes so collected by him, in and for the year 1874, he has never paid into the treasury; and that said King had never executed an additional bond as tax-collector, in accordance with the requirements of the act approved December 17, 1873, relating to the term of office of the several tax-collectors of this State. On this evidence, the court rendered judgment for the defendants;" to which the plaintiff excepted, and which is now assigned as error.

H. C. TOMPKINS, Attorney-General, for the appellant.—At the time of King's election as tax-collector, there was no law of force which provided when his term of office should commence, or when it should terminate; hence, it commenced as soon as he qualified after his election, and continued until his successor was elected and qualified.—*Stratton v. Outlaw,* 28 Cal. 44; *Cordiell v. Frizell,* 1 Nevada, 130. His official bond, then, bound him and his sureties for the faithful discharge of his duties during this entire term—that is, until his successor was elected and qualified; and the general statute declaring the legal effect of official bonds, which is by law incorporated in every bond executed under its provisions, made the sureties bound for any breach of the condition, "during the time the officer continues in office, or discharges any of the duties thereof.—Rev. Code, § 169. In the construction of this statute, effect must be given to each clause and word, and it can not be assumed that each of the two clauses means exactly the same thing. Thus construing it, the first clause makes the sureties liable so long as the term of their principal continues, whether such term be fixed by statute, or exists by reason of the failure of his successor to qualify; and the second makes them liable so long as their principal discharges any of the duties of the office, whether rightfully or wrongfully.

This statute is remedial, and must be liberally construed to advance the remedy, and to prevent the evil which it was intended to guard against, or suppress.—*Sprowl v. Lawrence,* 33 Ala. 674. It was not enacted in the interest of the sureties on official bonds, who had already ample means to protect themselves. It was obviously enacted in the interests of the public, and was intended to remedy defects in the laws then existing. It was first incorporated in the Code of 1852

[Brewer v. King's Sureties.]

(§ 130); before which time, as settled by the decisions of this court, sureties were only held liable for defaults committed by their principal during the term actually prescribed by law, and not for defaults committed while he held over until the qualification of his successor.—*Richardson v. Bean,* 5 Porter, 27; *Cuthbert v. Huggins,* 21 Ala. 349. This was the defect which experience had pointed out in the former laws, the mischief or evil which the new law was intended to suppress; and it is the only field of operation which can be found for it. No question had ever arisen as to the liability of sureties in the event of the resignation of their principal, and no legislation was called for in reference to such cases. King certainly entered on the discharge of the duties of his office under the bond signed by these sureties; he continued in the discharge of those duties under that bond, and he collected the money for which they are now sued in the discharge of those duties—that is, as tax-collector. Whether he collected them rightfully or wrongfully—whether as an officer *de jure,* or as an officer *de facto*—the sureties are equally liable. As bearing on this question, see *Vann v. Pipkin,* 77 N. C. 408; *Newman v. Beckwith,* 5 Lansing, Penn. 80; *Placer Co. v. Dickerson,* 45 Cal. 12; Brandt on Sureties, § 471.

The act of December 17, 1873, did not extend the term of office of all the tax-collectors, absolutely and unconditionally. The proviso required the execution of a new bond, as a condition precedent to the extension; and where no new bond was given, the term of the incumbent was not extended.— Potter's Dwarris, 118; *Voorhies v. U. S. Bank,* 10 Peters, 471. As King never gave a new bond, he did not hold over under the extended term allowed by that statute, but simply by virtue of his possession and election. His possession may have been wrongful, but it was under color of office, and in the discharge of official duties, for which these sureties are liable under the general law.

GUNTER & BLAKEY, *contra.*—1. If the act of 1873 had not required tax-collectors to give a new bond, for the additional term of office as extended by that act, the sureties on the bond for the expired term would not be liable for defaults committed after the expiration of the original term. The terms of the contract entered into by the sureties, under the law then of force (Code, §§ 163, 403), would not extend to defaults committed after the expiration of the term for which the bond was given. If section 179 of the Code can operate to make a bond for one term cover a subsequent term, without or against the assent of the sureties, then the power of the legislature in this respect is unlimited, and a bond exe-

(33)

cuted in 1860 can be made to cover defaults committed by the same officer ten years afterwards. There can be no difference, in principle, between an extension of the term for five months, and an extension for five years; nor between an additional term immediately succeeding the expired term, and one occurring after an interval during which the office has been held by another person. The statute does not require or authorize such an unreasonable construction. Its manifest purpose was to prevent the sureties from raising any question as to the legality of their principal's tenure of office—to make them equally liable, during the term for which they bound themselves, whether their principal was a legal officer or a usurper.

2. But any implied extension of the sureties' liability is excluded by the very terms of the act of 1873, which requires a new bond for the extended term; thereby recognizing the fact that the sureties on the original bond would not be bound, and showing an intention that they should not be held bound. The proviso was entirely unnecessary, if the sureties on the old bond were liable for the extended term.— *Wood v. Morrow*, 56 Ala. 1.

MANNING, J.—John R. King was elected, in November, 1871, tax-collector of Sanford, now Lamar county; and the defendants in this cause became his bondsmen for the faithful discharge of the duties of the office. The election was had under the act of 1868, "to regulate elections in this State;" according to which, a tax-collector was to be elected, in each county, on the first Tuesday after the first Monday of November in the year 1871, "and every three years thereafter."—Acts of 1868, p. 272, § 8. Defendants are sued for taxes collected by King, after the election, in November, 1874, of another person as tax-collector of that county, and between that time and the second Monday in April, 1875; and they deny liability. King is not a party to the cause, process not having been served on him.

The decision of the case involves a consideration of the meaning and effect of some provisions of the Code, and of the act of December 17, 1873, "relative to the term of office of the several tax-collectors of this State."—Acts of 1873, pp. 36-7. By the first section of this act, it is declared, that the tax-collectors to be elected in November, 1874, and every three years thereafter, should "severally enter upon the discharge of their official duties, on the second Monday in April next succeeding their election;" and the second section "enacted, that the term of office of the several tax-collectors of this State, now in office, shall continue until the second Mon-

day in April, 1875 ; *provided,* that such tax-collectors shall execute bonds, with sufficient securities, in the form now prescribed by law, for the faithful discharge of their duties as such during their respective terms of office as hereby extended ; and that all laws and parts of laws, in conflict with the provisions of this act, be, and the same are hereby, repealed." King did not give a new bond.

There being no express declaration by statute, prescribing what the term of office of a tax-collector, chosen by the people in 1871, should be, and provision being made for the election of his successor "three years thereafter," the person then elected would be entitled to give bond, and take the oath of office, immediately afterwards, and thereupon become tax-collector in King's stead.—*Cordiell v. Frizell,* 1 Nevada, 130.   Hence, according to law, as it existed when the bond here sued on was executed, his term of office—that during which his sureties agreed to be bound for his official conduct—was a term of three years.   But, it having been enacted, by the subsequent statute of 1873, that the person elected to the same office in November, 1874, should enter upon the discharge of its duties in April, 1875, he was not entitled to do so, and his term of office would not begin, before that time.—*Cordiell v. Frizell, supra.*   Wherefore, by the second section of that act, the legislature undertook to extend the term of his predecessor, then in office, over the intervening period ; adding to the enactment, for that purpose, the *proviso* above set forth.

This was, in effect, the creation for him of another term of office of that length.   Were the obligations of the sureties, upon the bond executed in 1871, continued thereby beyond the term for which their principal was elected, and through this additional period?   Manifestly not, unless certain provisions of the Code, under and in comformity with which their bond was executed, and by which it must be interpreted, show that they consented to such an enlargement by statute of their liability.   The legislature could not, otherwise, change the obligations of their contract, or create new ones, any more than it could abrogate or impair those of a contract between individuals.—See *United States v. Kirkpatrick,* 9 Wheat. 720.

By the condition of the bond in this case, conforming to section 157 of the Revised Code (Code of 1876, § 163), the obligors engaged that King should faithfully discharge the duties of his office "during the time he continues therein, or discharges any of the duties thereof."   And by section 169 of the Revised Code (Code of 1876, § 179), it is declared : "Every official bond, executed under this Code, is obligatory

on the principal and securities thereon : 1. For any breach of the condition, during the time the officer continues' in office, or discharges any of the duties thereof. 2. For the faithful discharge of any duties which may be required of such officer, by any law passed subsequently to the execution of such bond, although no such condition is expressed therein. 3. For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office, as by his failure to perform, or the improper or neglectful performance of those duties imposed by law."

The sections cited, it will be observed, are not confined to tax-collectors. They relate to all public officers. Clause 3, last above quoted, is not concerned in the present inquiry. Why the second clause, next preceding that, was incorporated in the statute law, is easily perceived. In the exigencies of society, new interests arise, and services in respect of them become necessary, the performance of which can, most conveniently and properly, be imposed upon existing officers : while, ordinarily, their sureties would not be liable for the faithful discharge of duties which did not belong to the office when they became such, unless such liability were distinctly assumed by them when they executed the bond. But the duties here referred to are those which may be annexed to the office, to be performed during the continuance of the term. They are new, or additional duties, appropriate to the office, not the same that originally pertained to it, and an extension by statute of the obligation of the bondsmen for the performance of them through a longer period than the term for which the officer was elected.—*Mayor of Camb. v. Dennis*, Ell., Bl. & El. 660. The 1st clause next preceding that just mentioned, of section 179, is the one to be chiefly considered.

By declaring the obligors liable for any breach of the condition, "during the time the officer continues in office, or discharges any of the duties thereof," it may have been intended to recognize his right to resign, and discontinue the discharge of such duties, and the State's right to remove and dismiss him according to law; after which, the liability of the bondsmen should cease, although his term of office had not run out. So, if, while in office, he had begun the execution of some duty, which was not finished when his term expired, it would be his right, under the law, to complete, after the term was ended, what was thus begun during its continuance. Or the officer might be authorized by law to hold over, during the short time after the election of his successor, which the latter might need to enable him to give the bond and take the oath of office. In which latter cases, the

[Brewer v. King's Sureties.]

sureties would continue bound for the acts of their principal during that interval. There is thus a field for the operation of this clause, without supposing with the Attorney-General, that it was the purpose to secure thereby to the State the right, by a subsequent act, to extend the obligations of the sureties, through another term of office, long or short, with which the legislature might undertake to invest their principal. If it was intended to secure to that body such authority as this, it is not to be supposed that a provision of so much importance, and which could be so easily expressed in plain words, would not be declared in unmistakable language. To hold that the words used conceded to the legislature the power to bind King's sureties for another term of office of five months, conferred by it upon him, would be an admission that it might, by successive enactments, continue him in office five years, or fifteen years longer, if the constitution did not hinder; and that the sureties would be as much bound for the prolonged period, as for the shorter one. As was said by Ch. Justice BEASLEY, of New Jersey: "I know no case, in which such an amplitude of responsibility has been thrown upon a surety, except when the terms of the obligation would admit of no other result."—*Citizens' Loan Association v. Nugent*, 11 Vroom, 215.

The interpretation contended for is not reconcilable with the rule for the construction of such clauses, established by the decisions in *Lord Arlington v. Merricke* (3 Saund. 403), and the numerous cases following it; according to which, provisions of that kind (and whether in statutes, or the conditions of bonds, their meaning is just the same), must be understood as restricted by the nature and duration of the offices to which they relate; or, to be more precise, though the obligatory words be "so broad that, intrinisically considered, they covenanted for the good behavior of the principal obligor, during the whole period of his remaining in the designated office, nevertheless the efficacy would be restricted to his current term, when such term was for a determinate period."—*Mayor v. Crowell*, 11 Vroom, 207. "Can we say," asked MANSFIELD, C. J., concerning the sureties in another case of the kind, "that they intended to be bound for an indefinite period?"—See, also, *Liverpool Water-Works v. Atkinson*, 6 East, 507; *Wardens, &c. v. Bostock*, 5 Bos. & Pul. 175; *Leadley v. Evans*, 2 Bingh. 32; *Peppin v. Cooper*, 2 B. & Ald. 431; *Kiton v. Julian*, 4 El. & Bl. 854; *Com. v. Fairfax*, 4 Hen. & Munf. 208; *Munford v. Rice*, 6 Munf. 81; *State v. Wyman*, 2 Gill & J. 254; *Welch v. Seymour*, 28 Conn. 387; *Chelmsford v. Demarest*, 7 Gray, 1; *Dover v. Twombley*,

42 New Hampshire, 59; *Bramford v. Iles*, 3 Wels., Hurl. & G. 380.

There are two limitations, within which the bondsmen of a public officer, who is elected for a term of service prescribed by law, certainly understand that they are impregnably intrenched, and beyond which their liability can in no event be carried. One of these limitations is of the amount, the total sum, which shall be the extreme measure of their responsibility : and the other is of the time during which they shall be answerable for any official misconduct, neglect, or default of their principal. Their engagement is to the amount of the penalty written in the bond, and for the term of office prescribed by law, and goes no further, unless it be plainly declared that it shall. These land-marks of their liability are of so great importance, that not even the legislature may remove them, without the consent, clearly secured, either in advance or subsequently, of the bondsmen themselves. We do not find it given in the clauses of the Code, which are relied on as showing it. On the contrary, it would seem that the enlarged responsibilities which they, and especially clause 3, above quoted, impose on the sureties, disclose good reasons why these limitations of time and amount, which appear to us to be essential parts of their contract, should be the more carefully maintained. The statute of 1873 itself recognizes such limitations, in expressly requiring, by its proviso, a new bond to cover the duties of the term as extended. For the effect of such a provision, notwithstanding the express enactment by clause 2 above quoted, in respect of duties imposed on the officer during his term, by acts passed after execution of his bond, see *Morrow v. Wood*, 56 Ala. 1; also, *U. S. v. Cheeseman*, 3 Sawy. 424; *Commonwealth v. Toms*, 45 Pa. St. 408.

Let the judgment of the Circuit Court be affirmed.

BRICKELL, C. J.—I cannot assent to this opinion. My view of the question may be found in the case of *Morrow v. Wood*, 56 Ala. 7. I do not think there is any obscurity, or ambiguity, in any clause of section 179 of the Code of 1876; and its manifest purpose is, to impose a liability on the principal and sureties in every official bond—1. "For any breach of the condition, during the time the officer continues in office, or discharges any of the duties thereof. 2. For the faithful discharge of any duties which may be required of such officer, by any law passed subsequently to the execution of such bond, although no such condition is expressed therein." *It is not allowable to interpret what has no need of interpretation.* No other field of operation, for these clear

[Young & Son v. Lehman, Durr & Co.]

statutory provisions, need be sought, than that which they so clearly express.