# Hall v. The State.

## Indictment for Murder.

1. *Arraignment of defendant; not improper to set criminal case for trial during civil week.*—The action of the trial court arraigning a defendant, who is indicted for murder, during a civil week of the term of court, and then setting his trial for a day of the succeeding civil week of the term and proceeding to his trial on the day so fixed, is not erroneous and subject to objection.

2. *Organization of jury in capital case; no objection that the initials of jurors are used.*—The fact that in the drawing of names of jurors by the jury commissioners, and on the special venires drawn for the trial of a capital case and the copies thereof served on the defendant, the initials of the christian names of the jurors were written on the slips and lists prepared, constitutes no ground for quashing the venire.

3. *Same; when same person is drawn on the venire of special jurors and serving on the regular jury, ground for quashing the venire.*—In the organization of a jury for the trial of a capital case, when it appears that there was drawn as a special juror and put on the venire of special jurors served on the defendant, the name of a person who was serving on the regular jury for week when the trial was to be had, although the christian name was designated in one instance by the initials and in the other by the christian name in full, it is error for the court to overrule the motion to quash the venire.

4. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder of a woman, where it is shown that the deceased was killed during an rencounter between her husband and the defendant, testimony showing that the deceased and her husband did not live peaceably together, and that he had been very cruel to her, is irrelevant to any issue in the case and inadmissible in evidence.

[Hall v. The State.]

5. *Same; same.*—In such a case, the appeals made by the deceased to the defendant at the time of the rencounter with her husband, and immediately preceding the firing of the fatal shot, are *res gestae* of the homicide and admissible in evidence.

6. *Same; same.*—In such a case, when it is shown that just after firing the fatal shot the defendant threatened to hit the deceased's husband, whom he was grappling, a statement made by a person present to the defendant, telling him not to hit the husband, that he had killed his wife, is admissible in evidence.

7. *Homicide; charge to the jury; circumstantial evidence.*—On a trial under an indictment for murder, where there was positive testimony of the fact that the defendant fired the fatal shot, and there was also circumstantial evidence introduced tending to show that the shot was not fired by the defendant, a charge requested by the defendant, which assumes that the only evidence tending to prove his guilt was circumstantial, is erroneous and properly refused.

8. *Argumentative charges* are properly refused.

9. *Charge to the jury; effect of contradiction.*—A charge which instructs the jury that if they believe that the principal witness for the State "has been successfully contradicted as to any material evidence, the jury may, in connection with all the other evidence, disbelieve him entirely," has a tendency to mislead the jury and is properly refused.

10. *Same; bad character of witness.*—In the trial of a criminal case, where there is evidence on the part of the defendant tending to show that the principal witness for the State was a man of bad character, a charge which instructs the jury that they have a right to look to the bad character of said witness in determining what credence, if any, they will give to his testimony, is erroneous and properly refused, in assuming that his bad character had been proved.

11. *Homicide; charge to the jury; right to protect home.*—On a trial under an indictment for the murder of a woman, where there was evidence for the defendant that the husband of the deceased woman invited the defendant and his companion to his home, and that it was in response to such invitation they were there, but the evidence for the State tends to show that the invitation extended by the deceased's husband was not accepted at the time it was extended, and that after the defendant and his companion came to the house of the deceased, her husband requested them both to leave, and upon their failing and refusing to do so, he went to a neighbor's house to borrow a pistol to coerce their departure, a charge is

[Hall v. The State.]

erroneous and properly refused which instructs the jury "that while the law regards a man's home as his castle; yet, if a man invites another to his home, he has no right to attack him there, and if he does so the visitor has the same right of self-defense as in other places."

12. *Same; same.*—In such a case, a charge is properly refused which instructs the jury that if they "believe from the evidence that the defendant was acting in self-defense, and while so acting killed Mrs. Gage [the deceased] accidentally, the jury can not find the defendant guilty."

13. *Same; same.*—In such a case, a charge is properly refused which instructs the jury that "If the defendant, with no intention to bring on the difficulty or of encouraging it after it begun, and Gage made the first hostile demonstration by rushing suddenly upon Hall with a weapon, or by appearing to do so, and if the accused was in such proximity to the deceased as to render it hazardous to attempt flight, or if the assault was with a deadly weapon, either a pistol or a billet of wood, and was open and direct, then the law would not require the accused to endanger his safety by flight."

14. *Same; same.*—In such a case, where there was conflict in the evidence as to who began the difficulty between the deceased's husband and the defendant, wherein the deceased was killed, a charge is properly refused which hypothesizes the defendant's acquittal upon the fact that the husband of the deceased started towards the defendant in a threatening manner, cursing him, and upon the latter becoming suddenly angered on this account, he had the right to shoot at the deceased's husband, is erroneous and properly refused.

15. *Same; same.*—In such a case, a charge which instructs the jury that if they believe from the evidence that the defendant was in the house of the deceased when her husband returned from the neighbor's house, where he had gone to procure a pistol, and that upon his returning the deceased's husband began to curse the defendant and rushed upon him with a weapon, and the attack of the husband was with such suddenness and fierceness as to leave no opportunity for the defendant's escape, without thereby increasing his danger to life or limb, and if the defendant was without fault in bringing on the difficulty, then he can not be found guilty, is erroneous and properly refused, in that it loses sight of the duty of the defendant to have retreated while the deceased's husband was seeking for a pistol.

16. *Same; same.*—In such a case, a charge is erroneous and properly refused which instructs the jury that if they find from the evidence that when the husband of the deceased came

[Hall v. The State.]

back from his search for a pistol the defendant was in the room where the deceased was, and had not been previously requested by her husband to leave the room, then her husband had no right to assault the defendant or approach him in a threatening manner, and the defendant had the right to act upon appearances and seize the husband, or do any other reasonably necessary act to prevent the husband from inflicting an injury upon the defendant, is erroneous and properly refused.

17. *Same; same.*—In a criminal case, a charge which seeks to inject a new issue in the case, is erroneous and properly refused.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. J. A. BILBRO.

The appellant in this case, Joseph Hall, was jointly indicted with James O'Bannon for the murder of Elizabeth Gage, by shooting her with a pistol. The appellant was tried separately, was convicted of murder in the second degree, and sentenced to the penitentiary for eighteen years.

At the July term of the Cherokee circuit court, during the first week of said term, the court arraigned the defendant and set Tuesday of the second week of said court, which was the week for the trial of civil cases, as the day for the trial of the defendant. To this action the defendant objected and duly excepted to the court's overruling his objection. Upon the cause being called for trial on Tuesday of the second week, the day previously set, the defendant objected to going to trial upon said day, on the ground that it was during the week set apart for the trial of civil cases. The court overruled the objection, and the defendant duly excepted. The defendant moved the court to quash the special venire upon several grounds. One of the grounds of this motion was that the Christian names of the persons upon said special venire were not given, only the initials of said names. The other ground of the motion, which is reviewed on the present appeal, is sufficiently shown in the opinion . The court overruled the motion and the defendant duly excepted.

On the trial of the case it was shown that Elizabeth Gage, the wife of Lon Gage, was killed late at night

some time after 12 o'clock, by being shot with a pistol.

The evidence for the State tended to show that the defendant and James O'Bannon came to the house of Lon Gage after 12 o'clock on the night of the killing, and asked said Gage to let them spend the night; that upon Gage telling them that he could not accommodate them, they then asked him to give them a drink of whiskey; that Gage got up, gave them the drink of whiskey; that the defendant and O'Bannon walked in the house and commenced to talk with Gage's wife and another woman staying at the house; that thereupon the defendant and O'Bannon became very boisterous and commenced cursing, and Lon Gage ordered them to leave his house. Upon their declining to do so, and saying they would do so when they got ready, Gage left the house and went to the home of a neighbor for the purpose of borrowing a pistol; that he did not get the pistol, and upon returning to his house, he found the defendant in the room where his wife was, talking to her, and he again ordered him to leave the house; that as he entered the room he picked up a stick of wood in the kitchen and when he went in the room and lighted the lamp the defendant jumped on him and commenced to drag him into the hall; that thereupon his wife begged the defendant and O'Bannon not to kill her husband, and got hold of Lon Gage and tried to keep the defendant from dragging him into the hall; that said Elizabeth Gage was screaming all the time; that the defendant told Elizabeth Gage to stop her noise and turn Lon Gage loose, and upon her declining to do so, he reached his arm over Lon Gage and fired, the shot killing Elizabeth Gage. Other evidence was introduced showing that Lon Gage, the defendant, James O'Bannon and others had, during the early part of the night, been together on the mountain a short distance from Gage's house to a whiskey wagon, where they had been drinking together.

The evidence for the defendant tended to show that Lon Gage had invited the defendant and O'Bannon to go to his house that night; that the invitation was extended when Gage was leaving them; that they were unable to go at that time, but did go later, and that it

was in response to this invitation that they were present at his house at the time of the killing.

The evidence for the State, in rebuttal to this tendency of the defendant's evidence, tended to show that when Lon Gage separated from the defendant, James O'Bannon and the others who were together at the whiskey wagon, he asked the defendant and O'Bannon to go to his house with him to get a drink; and that upon their declining to go he left and went home and went to bed.

The defendant, as a witness in his own behalf, testified that he did not shoot Elizabeth Gage; that after Lon Gage left the house to go for a pistol, he went into the hall and apologized to Mrs. Gage for any disturbance he had created or for any remarks that he had made; that during the time he was talking with Mrs. Gage he went into her room; that while in the room Gage returned and, cursing the defendant, said that he would make him leave, and then started towards the defendant in a threatening manner; that the defendant grabbed Gage, and while he was dragging him from the room and while Mrs. Gage was trying to hold her husband back, some one fired a pistol and the shot killed Mrs. Gage. The defendant also testified that O'Bannon was the first to go into the house, and this seemed to make Gage mad, and it was at this time that he ordered them out of the house, and upon their refusing to go, he went for the pistol.

The defendant sought to show by several witnesses examined that Gage and his wife did not live peaceably together; that he had treated her cruelly and had made rough, unkind statements about her. The State objected to the introduction of such evidence each time the defendant sought to introduce it, the court sustained each of such objections, and to each of such rulings the defendant separately excepted.

During the examination of Lon Gage, as a witness, he testified that when the defendant grabbed him and was dragging him to the door, his wife caught hold of him and said: "Please don't kill my husband. What will become of me and my children?" The defendant objected to these statements of the witness and moved

to exclude the same from the jury, on the groond that they were illegal, irrelevant and incompetent evidence. The court overruled the objection, and the defendant excepted.

The witness Gage further testified that after the defendant had shot his wife and had dragged him into the hall, he started to hit him, when O'Bannon said to him: "Don't hit him; you have killed his wife." To this statement of the witness the defendant objected, and moved to exclude it from the jury on the ground that it was illegal and irrelevant evidence. The court overruled the objection, and the defendant duly excepted.

The defendant introduced witnesses who contradicted, by their testimony, the testimony of the witness Gage. The defendant also introduced evidence showing that the character of Lon Gage and Elizabeth Gage were bad, and that his character was good. There was also evidence on the part of the defendant that Lon Gage's character for truth and veracity was bad.

Upon the introduction of all the evidence, the court, at the request of the defendant, gave to the jury thirty written charges. The defendant also requested the court to give to the jury the following written charges, and separately. excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that the humane provisions of the law is that upon circumstantial evidence there should not be a conviction unless to a moral certainty it excludes every other reasonable hypothesis than that of the defendant's guilt, no matter how strong may be the circumstances, if they can be reconciled with the theory that some other person may have done the guilty act, then the guilt of the accused is not shown by that full measure of proof the law requires, and the jury can not convict the defendant." (2.) "The court charges the jury that the want of more evidence in favor of innocence than there is in favor of guilt does not necessarily determine that the jury may not have a reasonable doubt of guilt and acquit the defendant." (3.) "The court charges the jury if defendant merely went to Gage's house to get whiskey from Gage, this was not a wrongful act." (4.) The court

charges the jury, if the jury believe from the evidence that Gage had been successfully contradicted, as to any material fact, the jury may in connection with all the other evidence disbelieve him entirely." (5.) "The court charges the jury that while the law regards a man's home as his castle, yet, if a man invites another to his home, he has no right to attack him there, and if he does so the visitor has the same right of self-defense as in other places." (6.) "The court charges the jury that if the jury believe from the evidence that defendant was acting in self-defense, and while so acting killed Mrs. Gage accidentally, the jury can not find the defendant guilty." (7.) "The court charges the jury if the defendant with no intention of bringing on the difficulty or of encouraging it after it begun and Gage made the first hostile demonstration by rushing suddenly upon Hall with a weapon, or by appearing to do so, and if the accused was in such proximity to the deceased as to render it hazardous to attempt flight, or if the assault was with a deadly weapon, either a pistol or a billet of wood, and was open and direct, then the law would not require the accused to endanger his safety by flight." (8.) "The court charges the jury if Hall went to the house of Gage on the invitation of Gage and took no part and did not aid or abet O'Bannon in any quarrel that he had with Gage and that he went into the house while Gage was gone and was apologizing to Mrs. Gage for being there, and while he was so apologizing to her Gage came in and made for Hall, cursing him, and Hall became suddenly angry and tried to shoot Gage, but missed Gage and accidentally killed Mrs. Gage, then Hall can not be guilty as charged in the indictment." (9.) "The court charges the jury if the jury believe from the evidence that Hall was in the house of Gage when Gage returned from Mosley's that Gage began to curse him and rushed upon him with a weapon, either a pistol or billet of wood, and the attack of Gage was with such suddenness and fierceness as to leave no opportunity for defendant's escape without thereby increasing his danger to life or limb, and if defendant was without fault in bringing on the difficulty, then defendant can not be found guilty." (10.)

"The court charges the jury if the jury believe from the evidence that defendant went to Gage's on his invitation and Gage only told O'Bannon to leave, this did not make this defendant's staying an unlawful act." (C.) "The court charges the jury that they have a right to look to the bad character of the witness Gage in determining what credence, if any, they will give to his testimony." (F.) "The court charges the jury that if, upon a consideration of all the evidence in this case, the jury are in doubt as to whether defendant or some other person who was not acting in concert with the defendant, and whom defendant was not aiding or abetting or encouraging, did the shooting, then the jury can not convict." (I.) "The court charges the jury that although Gage may have ordered O'Bannon to leave his house on the night of the killing, yet unless the jury also find that Hall heard this order to leave or that Gage also ordered Hall to leave, then Hall was not at fault in not leaving upon Gage's order to O'Bannon." (J.) "The court charges the jury that if they find from the evidence that when Gage came back from Mosley's just before the killing defendant was in the room and had not been previously requested by Gage to leave the room, then Gage had no right to assault Hall or approach him in a threatening manner; and Hall had a right to act upon appearances and seize Gage or do any other reasonably necessary act to prevent Gage from inflicting an injury upon the person of Hall."

BURNETT, HOOD & MURPHREE and H. W. CARDEN, for appellant, cited Code, § 5009; *Ryan v. State*, 100 Ala. 108.

CHAS. G. BROWN, Attorney-General, for the State.

McCLELLAN, C. J.—Defendant's objections to the action of the court in arraigning him during the first, a civil, week of the term and then setting his trial for a day of the second, another civil week of the term, and proceeding to his trial on the day so fixed, were without merit and properly disregarded by the court.—*Goley v. State*, 87 Ala. 57; Code, §§ 913, 5003.

The practice of writing only the initials of the Christian names of jurors on slips and lists prepared by jury commissioners, and on *venires* and copies thereof served on defendants, etc., etc., has too long obtained and been treated by all courts as regular and sufficient to be now drawn in question; and defendant's motions in this case to quash the *venire*, etc., etc., because the given names of certain jurors were indicated only by initial letters on the *venire* and on the list served on him were well overruled.—*Brown v. State*, 128 Ala. 12.

The trial court ordered the drawing of thirty-five names of persons to be special jurors for the trial of this case, and, having drawn thirty-five names from the jury box in the attempted and supposed execution of said order, further ordered "that the special jurors drawn in this case together with the jurors drawn and summoned for the second week of this court shall constitute the *venire* from which to select a jury for defendant's trial," etc., etc. One of the jurors drawn and summoned for the second week of the court, and who was in attendance as a regular juror for the week when defendant's case came on for trial, was Cape Cannon; and by this name said Cannon was put upon the special *venire* as one of the regular jurors drawn and summoned for the week. On one of the slips drawn by the presiding judge from the jury box, under the order for thirty-five special jurors was the name of C. B. Cannon, and this name was put on the *venire* of special jurors which the sheriff was ordered to summon for this trial. C. B. Cannon was summoned as one of said special jurors, and his name, C. B. Cannon, was put on the list served on the defendant among and as one of the thirty-five special jurors ordered for this case. So that on the list of the whole *venire* served on the defendant there was the name of Cape Cannon as one of the regular jury for the week and also the name of C. B. Cannon as one of the jurors specially drawn and summoned for this case. On the motion to quash the special *venire* (composed of both regular and special jurors) it was proved that the Cape Cannon on the regular jury and C. B. Cannon drawn and summoned as one of the thirty-five special jurors was one and the same man, so that in

reality only thirty-four of the thirty-five special jurors ordered were drawn and summoned. Upon this state of the case, the court erred in overruling the motion to quash the *venire.*—*Roberts v. State,* 63 Ala. 515; *Darby v. State,* 92 Ala. 9.

This error was not cured by the subsequent action of the court in having this juror to stand aside when the name of C. B. Cannon was drawn from the hat, after the name Cape Cannon had been drawn and the juror had under the latter name been peremptorily challenged by the State. Nor would it have been cured had the court put the juror a second time on the State and the State had a second time challenged him peremptorily. The defendant was entitled to have this juror on the *venire* as one of the regular jurors for the week, and he was also entitled to another and different person on the *venire* as one of the thirty-five special jurors ordered for his trial. The other exceptions reserved in connection with the empanelling the jury on the trial below are such as will probably not occur again; and we deem it unnecessary to pass upon them.

The several exceptions reserved to rulings upon the competency of testimony have been considered, and we find them to be without merit.

It will suffice to say of charge 1 refused to defendant that it gratuitously assumes that the only evidence tending to prove guilt was circumstantial.

Charges 2, 3 and 10 asked by defendant were bad for being argumentative.

Charge 4 refused to defendant had a tendency to mislead the jury to discard Gage's testimony upon the mere consideration that he had been successfully contradicted as to a material fact when they might have concluded that he testified conscientiously as to that fact and was honestly mistaken as to it. Charge C having reference to this subject of Gage's credibility was bad for assuming that his bad character had been proved. The law on this subject was fully and correctly expounded to the jury in charges numbered from 1 to 8, inclusive, given at defendant's request.

Charge 5 assumes that defendant and O'Bannon were at Gage's house by invitation. On the evidence the jury

might have found to the contrary, since the invitation shown was for them to accompany Gage home earlier in the night, and this invitation had not been accepted. Moreover, a man has the same right to invite another away from as to his house; and the evidence for the State tended to show that some minutes before the shooting Gage requested both Hall and O'Bannon to leave, and that, upon their failing and refusing to do so, he had gone off to a neighbor's to procure a pistol to coerce their departure. If the jury found the facts in line with this evidence, neither O'Bannon nor the defendant had any right to remain there at all, much less to stand their ground there and engage in a personal difficulty with Gage on his return :· They should have retreated at once. Charge 6 also is bad for taking no account of this phase of the evidence; and for the further reason that it refers a question of law to the jury.—*Miller v. State,* 107 Ala. 40.

Charge 7 has a like infirmity: It pretermits all inquiry as to the duty of defendant to have retreated while Gage was away in quest of a pistol. His remaining there during this interval was a wrong provocative of whatever trouble ensued upon Gage's return, and was also a failure to avail himself .of an opportunity to retreat, if the evidence for the State is to be believed. And charge 8 pretermits all reference to the testimony of Gage as to his ordering Hall to leave, and to any quarrel that had occurred between Gage and Hall according to the testimony of the former. This charge 8 is also bad in declaring in effect that if Gage made for Hall, cursing him, and the latter then became suddenly angered he had a right to shoot Gage; or at least that he would have been excusable for shooting Gage under these circumstances. If the provocation hypothesized were sufficient to reduce the shooting to manslaughter—which it cannot be said as a matter of law to be—defendant would still have been guilty of that grade of offense which is "charged in the indictment." Charge 9 also loses sight of the duty that, according to the evidence for the State, was upon Hall to retreat while Gage was seeking a pistol.

[Dozier v. The State.]

Charge F misconceives the measure of proof or degree of mental conviction necessary in criminal cases. The jury may be "in doubt" as to whether the defendant or some other person with whom he had no connection did the shooting, and yet they may have no *reasonable* doubt that defendant was the guilty agent.

There was no dispute about Hall's hearing Gage order O'Bannon away: He so testified himself. Charge I was, therefore, bad for injecting this issue into the case.

Charge J takes from the jury all inquiry as to the practicability of Hall's retreating after Gage returned from his quest for the pistol. Besides the question here is as to the right of Hall to kill Mrs. Gage, if he did kill her, and not as to his right to "seize Gage or do any other reasonably necessary act to prevent Gage from inflicting an injury upon" him.

For the error committed by the court in overruling defendant's motion to quash the *venire*, the judgment must be reversed. The cause is remanded.

Reversed and remanded.