**CITY OF BIRMINGHAM v. HAWKINS, Tax Collector. (6 Div. 665.)**

(Supreme Court of Alabama. May 18, 1922. Rehearing Granted June 30, 1922.)

**1. Schools and school districts ⚷106—Statute as to commission on taxes collected by ex officio tax collector of city not applicable to taxes collected for school district coterminous with city.**

Acts 1911, p. 130 et seq., §§ 36, 37, entitling tax collector and assessor to specified commissions on municipal taxes collected by the collector as ex officio tax collector of the city of Birmingham, *held* inapplicable to 3-mill tax levied by the municipal authorities for public school purposes under amendment of Constitution proposed by Acts 1915, p. 107, proclaimed November 22, 1916, since the city constitutes a separate school district organized as an instrumentality of the state, and such tax is therefore not a municipal tax, but is levied and assessed as a state and county tax, and the collector in collection thereof does not act as an ex officio tax collector of the city, but acts as an officer of the state and county, and his commission is therefore governed by Acts 1919, p. 282 et seq., § 197, relating to general revenue of state, in view of Acts 1919, p. 567 et seq., art. 12, §§ 4, 8, and Const. 1901, § 216.

**2. Officers ⚷100(1)—Services of county collector and assessor relative to school district tax held "ex officio services" within constitutional provisions prohibiting increase or diminishment of compensation during term.**

Tax collector could retain commissions for himself and assessor on 3-mill school district tax collected by him under Acts 1919, p. 282 et seq., § 197, though they were in office at the time of the enactment thereof and took office while Acts 1915, p. 386 et seq., §§ 27, 149, providing that, after the expiration of the then terms, no commissions should be allowed on assessments of any local or special school taxes, were in effect, notwithstanding Const. 1901, §§ 68, 281, prohibiting the increase or diminishment of county officers' compensation during the term for which they shall have been elected or appointed, and prohibiting the granting of extra compensation for services after rendition thereof, but making such provision inapplicable to allowances to county officers for "ex officio services," since the services required of assessors and collectors in the matter of such tax were ex officio.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Ex Officio.]

**3. Officers ⚷100(1)—"Ex officio services" within constitutional provisions as to increase of compensation defined.**

"Ex officio services" within Const. 1901, §§ 68, 281, prohibiting the increase or diminishment of compensation of officers during term for which elected or appointed and the allowance of extra compensation for services after rendition thereof except as to "ex officio services" rendered by county officers, are those which the law annexes to a particular office and requires the incumbent to perform without providing specific or precise compensation therefor.

**4. Taxation ⚷549(1)—Commissions of collector and assessor on taxes collected during current term within statute not governed by statute specifying commission after current term.**

County collector could retain for himself and assessor the commissions specified in Acts 1919, p. 282 et seq., § 197, notwithstanding section 37, specifying the commission to which the assessor shall be entitled " after the expiration of the current term of the present incumbent," where the taxes on which the commissions were retained were collected during the current term.

**5. Statutes ⚷255—All reasonable intendments indulged in favor of immediate operation of act.**

All reasonable intendments are to be indulged in favor of the operation of the act immediately upon its adoption, except as otherwise specifically limited.

---

⚷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Schools and school districts ⚷106—Statutory commissions of collector ex officio for city held to apply to tax levied by city solely for school purposes.**

Acts 1911, p. 130 et seq., §§ 36, 37, specifying commissions of county collector and tax assessor on taxes collected by the collector as tax collector ex officio for the city of Birmingham, and not Acts 1919, p. 282 et seq., § 197, specifying commissions on taxes collected by him as a county officer, *held* applicable to the tax levied by city of Birmingham under the amendment of the Constitution proclaimed January 13, 1920, proposed by Acts 1919, p. 899, though the tax was voted to be used solely for school purposes; such tax constituting a municipal tax, and not a tax of the school district coterminous with city.

Appeal from Circuit Court, Jefferson County; J. J. Curtis, Judge.

Action by the City of Birmingham against James F. Hawkins, as Tax Collector, to recover money retained by the Tax Collector as commissions. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

W. J. Wynn and W. A. Jenkins, both of Birmingham, for appellant.

The tax collector and tax assessor are each entitled to receive only two-tenths of 1 per cent. of the taxes collected for the city of Birmingham. Acts 1911, p. 142. Acts 1919, p. 342, § 197, is not in conflict with, and does not repeal or modify Acts 1911, p. 142, §§ 26, 37. 200 Ala. 533, 76 South. 859; 142 Ala. 90, 38 South. 761; 164 Ala. 529, 51 South. 159; 160 Ala. 168, 49 South. 78; 108 Ala. 336, 18 South. 816; 206 Ala. 405, 90 South. 781.

W. K. Terry, of Birmingham, for appellee.

The two mills tax was not a municipal tax, but a school tax.

SAYRE, J. The municipal authorities of the city of Birmingham, under authority of law which is not denied, levied a tax of 3 mills for the year 1919, to be applied exclusively to the use of the public schools in said city, which, under general law, is a separate school district. For 1920 the same authorities levied the 3-mill tax and in addition a tax of 2 mills as authorized by an election held in virtue of an amendment of the Constitution shown in the Acts of 1919, at page 899, the adoption of which was proclaimed January 13, 1920. These taxes were levied for the exclusive uses of the public schools of the city of Birmingham. The 3-mill tax could not have been levied for any other purpose. By the act of March 24, 1911 (Acts, p. 130 et seq.), the tax collector of Jefferson county is made ex officio tax collector for the city of Birmingham. Appellee, tax collector of Jefferson county, has collected the taxes above referred to, and the question presented by this appeal relates to the amount of commissions he is entitled to receive and retain on account of his services and the services of the tax assessor in that behalf.

Section 36 of the act of March 24, 1911, supra, provides (to quote so much of its language as is pertinent to the present occasion) that—

"The tax assessor of each county [meaning Jefferson county, for the act was so limited as to population as to apply only to Jefferson county] shall be entitled to receive from the tax collector, out of the first moneys collected, respectively, for each of such cities [meaning, however Birmingham] * * * two-tenths of one per cent."

Section 37 of the same act provides that—

"The tax collector of each county shall be entitled to receive commissions on taxes collected by him for each of such cities * * * two-tenths of one per cent. of the taxes collected for each of such respective cities."

Appellant's contention on the original submission of this cause was that appellee should be allowed to retain only such commissions as are given to the assessor and collector by sections 36 and 37 supra; and we presume such was the contention in the trial court. Now, however, the contention in that behalf is that, for reasons to be stated hereafter, appellee is not entitled to retain any commissions on these special funds.

Appellee, on the other hand, claims the right to retain commissions under section 197 of the act "to provide for the general revenue of the state of Alabama," approved September 15, 1919 (Gen. Acts, p. 282 et seq.), reading as follows:

"The tax collector shall be entitled to receive commissions on taxes collected by him as follows, to wit: In counties where collections do not exceed twelve thousand dollars, the rate of commission shall be eight per cent. on the first thousand dollars, four per cent. on the second thousand dollars, and two per cent. on the remainder. In counties where the collection exceeds twelve thousand dollars, the commission shall be as above declared up to twelve thousand, and one and one-half per cent. on the remainder up to sixty thousand dollars, and on all above sixty thousand dollars, one per cent. He shall also be entitled to receive two per cent. on all collections made by him of special taxes, whether such special taxes be levied for the state or county. The tax assessors and tax collectors shall receive such commissions as may be allowed by the commissioner's court, boards of revenue or other governing bodies of the several counties of the state, to be not less than one-half of one per cent., and not more than one per cent. each as fees on all school funds assessed and collected by them, to be paid out of such special taxes. The collector may retain his commissions upon collections

when he makes payment into the state treasury."

And a resolution adopted by the board of revenue of Jefferson county on October 1, 1919, in the following language:

"That the tax collector and tax assessor be and each is hereby allowed to receive as commission one per cent. each as fees on all school funds assessed and collected by them, said fees to be paid into the county treasury as funds belonging to the general fund of the county."

The last provision of this resolution is explained by the act of September 14, 1915 (Local Acts, p. 374) placing the tax collector of Jefferson county, along with other county officers, on a salary, and providing that costs, fees, and commissions then authorized by law and collected by the several officers should continue to be collected, but should be paid into the county treasury.

In the trial court it was held that appellee should be allowed to retain out of the 2 and 3 mill tax moneys collected by him for the separate school district composed of the city of Birmingham 1 per centum of said moneys.

[1] First, then more particularly as to the 3-mill tax moneys: These moneys do not fall under the influence of the act of 1911 for the reason that in the collection of such taxes the tax collector of Jefferson county acts as an officer of the state and county, and not as an ex officio tax collector of the city of Birmingham. The municipality and the separate school district are coterminous and the administration of the fund derived from these taxes is committed to municipal authorities (section 4 of the act "to provide a complete educational system for the state of Alabama," etc., approved September 26, 1919; Gen. Acts, p. 567 et seq.); that is, to the city board of education elected by the municipal authorities; but the separate school district is organized as an instrumentality of the state, and the taxes in question are not municipal taxes in any constitutional or ordinary sense. Section 216 of the Constitution limits the assessment of taxes for municipal purposes on property within the municipality to "the value of such property as assessed for state taxation during the preceding year," whereas the 3-mill school tax is levied and assessed on property valuations fixed by state authorities for the current year. This consideration was sufficient to draw an opinion from the Attorney General, March 7, 1922, to the effect that the tax in question is not a municipal tax, but is levied and assessed as a state and county tax. True, section 8 of article 12 of the act of September 26, 1919, supra, provides for the collection of this tax in special school districts comprising cities with a population of 2,000 or more by the city tax collector, "unless otherwise provided by law," but taxes of this peculiar character are levied for districts outside of cities of 2,000, and the general provision is that they are collected by the collectors of taxes for the state. The fact, therefore, that the tax in question is collected by appellee, who is at once tax collector for the state, the county, and the municipality, proves nothing in respect of the point here at issue, and leaves the question to be determined by reference to the nature of the tax. On the consideration stated above, our judgment is that this tax is not affected by the provisions of the act of March 24, 1911, but does fall within the purview of the provisions of section 197 of the act "to provide for the general revenue of the state of Alabama," supra.

[2] But it is contended that the tax collector is not entitled to retain any commissions on these funds for account of himself or the assessor, for the reason that, when the act of September 15, 1919, and section 197 thereof, was adopted, tax assessors and collectors were serving terms which began October 1, 1917, and expired October 1, 1921, having assumed office with the onus of sections 27 and 149 of the act approved September 14, 1915 (Gen. Acts, p. 386 et seq.), prescribing that, after the expiration of the then terms, no commissions should be allowed on any assessments of any local or special county school taxes, and hence that section 197 of the act of 1919, supra, construed agreeably to the limitations of sections 68 and 281 of the Constitution, cannot be permitted to operate to the advantage of collectors and assessors in respect of the funds here in question. Section 281 reads:

"The salary, fees, or compensation of any officer holding any civil office of profit under this state or any county or municipality thereof, shall not be increased or diminished during the term for which he shall have been elected or appointed."

And the pertinent part of section 68:

"The Legislature shall have no power to grant or to authorize or require any county or municipal authority to grant, nor shall any county or municipal authority have power to grant any extra compensation, fee, or allowance to any public officer * * * after service shall have been rendered * * * nor to increase or decrease the fees and compensation of such officers during their terms of office * * * provided this section shall not apply to allowances made by commissioners' courts or boards of revenue to county officers for ex officio services."

Let the similarity of these sections be noted. In part, at least, they are to the same effect. As against so much of these sections as operate to a common effect—that is, such parts as deny the power to increase or diminish fees and compensation of officers—relief is provided in the case of allowances to county officers for ex officio services.

[3] As we have seen, appellee and the tax assessor of Jefferson county went into office under a law which denied them the right of commissions on local or special county school taxes. But ex officio services are those which the law annexes to a particular office, and requires the incumbent to perform without providing specific or precise compensation therefor. The services required of assessors and collectors in the matter of the 3-mill tax are ex officio, and it was competent for the Legislature to provide compensation as it did by section 197 of the act of 1919.

[4, 5] There remains the question resulting from what has been considered by executive officers to be the lack of co-ordination between sections 37 and 197 of the act of September 15, 1919. Section 197 has been quoted. Section 37, to quote so much as is necessary, provides:

"The tax assessor shall, during the current term of the present incumbent of said office, be paid commissions as now provided by law. After the expiration of the current term of the present incumbent of the office of tax assessor, the tax assessor shall be entitled to receive from the tax collector, out of the first money collected by him * * * two per cent. on all collections made by the tax collector on special taxes, whether such special taxes be levied for the state or county, to be paid out of such special taxes, except special county and district school taxes on which he shall receive one-half of one per cent."

The foregoing section, it will be noted, speaks to the case of assessors only, its provision for them, so far as concerns special county and district school taxes, being that they shall receive one-half of 1 per cent. after the expiration of their current terms. But, as for their current terms, there was no provision for commissions on the special county and district school funds arising out of the 3-mill tax, which was authorized and levied for the school district comprising the city of Birmingham in the late summer of 1919, under authority of the amendment of the Constitution proposed by the act of March 17, 1915 (Acts 1915, p. 107), and proclaimed November 22, 1916. And the fore part of section 197 applies to tax collectors only; that is, it provides for the collector's commissions on ordinary taxes and on special taxes levied for the state or county, this much of the section being a rescript from section 149 of the act approved September 14, 1915, supra. But, further, section 197 provides for the commissions of both assessors and collectors in the case of special school taxes, thus, by inference, limiting the previous more general provision as to special taxes to special taxes other than school taxes. There is nothing in this last-mentioned section indicative of a legislative purpose to postpone the operation of the section. All reasonable intendments are to be indulged in favor of the operation of the act immediately upon its adoption except as otherwise specifically limited. Macon County v. Abercrombie, 184 Ala. 283, 63 South. 985. There is no constitutional obstacle to such operation so far as concerns the commissions now in question. It results that the only provision governing the commissions of either assessors or collectors on the 3-mill tax for the period in question is to be found in that part of section 197 which gives them such commissions as may be allowed by the board of revenue, "to be not less than one-half of one per cent., and not more than one per cent." The trial court committed no error on this branch of the case.

[6] The question as to commissions on the 2-mill tax must be decided differently. This tax was authorized by the amendment of the Constitution proclaimed January 13, 1920, supra. The election authorizing this tax for the city of Birmingham was held May 8, 1920. The amendment empowers certain named municipalities, Birmingham among the rest, "to levy and collect a tax of one-half of one per centum in any one year on property situated thereon, based on the valuation of such property as assessed for state taxation for the tax year ending on the 30th day of September next succeeding the levy * * * which tax shall be used only for the purpose or purposes for which same is levied and collected." Under this authority the municipality voted the 2-mill tax "to be used solely and only for the public schools of the city," leaving in abeyance the right to vote the balance of 3 mills authorized by the amendment for any other municipal purpose. In respect of origin and authority there can be no difference in the classification of any special taxes levied under this amendment of the Constitution. They must all be municipal taxes. The tax in question is levied for the special purpose of maintaining the public schools in the named municipalities, and may not be levied elsewhere. We perceive no reason why there should be a difference between this and other special school taxes, except that the Constitution, as amended, has so provided; but that is enough. The fund, then, raised by this tax does not fall within the purview of section 197 of the act of September 15, 1919, but is governed by the provisions of the act of March 24, 1911, which means that since 1912 the tax collector of Jefferson county, in virtue of his office as ex officio tax collector for the city of Birmingham, has been entitled to receive as commissions one-fifth of 1 per centum of the 2-mill tax in question, and must account to the city for the difference between the sum so realized and the sum produced by the 1 per centum which the board of revenue undertook to fix as his commission. In order that this last-named sum may be properly ascertained and re-

duced to judgment, this cause will be remanded to the trial court.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.