165 So. 71

UNITED STATES FIDELITY & GUARANTY CO. v. STATE, for Use of CITY OF GADSDEN.

7 Div. 278.

Supreme Court of Alabama.

Nov. 21, 1935.

Rehearing Denied Jan. 16, 1936.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

Dortch, Allen & Dortch, of Gadsden, for appellee.

FOSTER, Justice.

This is an action against John A. Camp, the tax collector of Etowah county, and the surety on his official bond. From a judgment against both defendants, the United States Fidelity & Guaranty Company, the surety, appeals and makes separate assignments of error.

The trial was had without a jury, and the chief question of law is controlled by the sufficiency on demurrer of count 2, on which the trial was had.

The allegations of that count, material on the question of law, are in substance that defendant Camp was tax collector of Etowah county, and as such made bond conditioned as provided by section 3046, Code, approved September 25, 1931, and entered upon the discharge of his duties. On September 8, 1931, the board of commissioners of the city of Gadsden passed and adopted, and on September 10, 1931, duly published (Transcript, p. 86), an ordinance providing, among other things, for the collection of municipal taxes by the state and county tax collector of Etowah county. All of this was effective prior to the execution of the bond in question. It then alleges that Camp, as county tax collector thereby became required by law to collect all taxes due the city, and to account to the city for the taxes so collected. It is then alleged that he collected a large (named) sum of such municipal taxes, which he unlawfully retains and refuses to account to the city. There was a special finding of the facts by the presiding judge finding that such allegations were true, and a judgment was rendered in accordance with it. Whether the finding supported the judgment as a matter of law is another method of presenting the question raised by demurrer to count No. 2.

The argument by appellant in substance is this that section 1951, Code, authorizes the city council to provide for a city tax collector. Section 1905, Code, requires all city officers or employees handling money of the city to give bond, approved by the mayor, etc. Section 3095 authorizes a city by ordinance to provide for the collection of city taxes by the county tax collector. The city commissioners of Gadsden did pass such an ordinance. Defendant Camp was then required by section 1905, as appellant argues, to give bond to the city to cover city taxes to be collected by him. This was not done, but the bond he gave, with appellant as surety, was the bond required by section 3046, Code, of county collectors.

The question is whether the bond which he gave is bound to answer for his failure to account for city funds collected. The bond sued on is conditioned as required by law "to discharge the duties of his office, which are or may be required of him by law during the time he continues therein." Section 3046, Code.

Appellant argues that by the city ordinance, Camp became the city tax collector, ex officio, under section 3095, Code, and as such was required by section 1905 to execute a separate bond, which alone was or should be responsible for his failure to account for city revenues so collected. Authorities are cited to the effect that if Camp holds thereby an ex officio office under a law which requires him to give a separate bond to cover that service, his other official bond is not liable for his conduct as such ex officio officer.

Assuming that contention to be true, without a careful consideration of it, we do not think that the statutes cited make Camp an ex officio city officer required by law to give a separate bond from that of county tax collector. We cannot see in section 3095, Code, a proper interpretation to the effect that thereby the tax collector became a city officer or employee. It provides in substance that cities may by ordinance require the county tax collector to collect the city taxes, thereby making applicable the machinery provided by law for the enforcement, etc., of state and county taxes. We think that when such a city passes an ordinance of that sort, an additional duty is thereby imposed by law (section 3095, Code) upon the county tax collector, for which additional compensation is provided by the same statute. This was done and became a legal duty before the tax collector made the bond sued on, and went into office October 1, 1931. But under the express provisions of section 3046, Code, it could have been done afterwards. It was pointed out in our case of Coleman v. Ormond, 60 Ala. 328, that the rule of the common law to a contrary effect, shown in Morrow v. Wood, 56 Ala. 1, had been changed by statute. The duty imposed was the creature of law, and section 3095 effective when the delegated power of the city had been thus exercised. It is none the less a requirement of law rather than city ordinance that it was not to be effective for any city until that city council so ordained. Ward v. State, 154 Ala. 227, 45 So. 655; Ex parte City of Birmingham, 199 Ala. 9, 74 So. 51; McNiell v. Sparkman, 184 Ala. 96, 63 So. 977.

It is not an act of the officer in a private capacity, nor one imposed by contract, nor by a court, as distinguished from the law. Coleman v. Ormond, supra;

McKee v. Griffin, 66 Ala. 211; Norton v. Kumpe, 121 Ala. 446, 25 So. 841; American Surety Co. v. First Nat. Bank, 203 Ala. 179, 82 So. 429.

When the tax collector for the city is appointed under section 1951, and is required to make bond under section 1905, the machinery for the assessment and collection of taxes is that provided by section 2124 et seq., Code. But when a city adopts an ordinance under section 3095, Code, the machinery is the same as that provided in the chapter relating to state and county taxes. The officers performing duties under that chapter include in all such proceedings the city taxes as well as those of the state and county, and Camp so acted in respect to delinquent taxes (Transcript, p. 81).

In the case of Birmingham v. Hawkins, 208 Ala. 79, 94 So. 62, the court was dealing with a special act effective only in Jefferson county, in which it was expressly enacted that the county tax collector was thereby made ex officio city tax collector. Of course, he was so called in the opinion. There was no reference to a condition created under section 3095. The court was not dealing with the subject we have here in any respect.

Moreover, a casual reference to Camp as the city tax collector need not imply more than that he was under a duty to collect the city taxes as required by section 3095.

Under the authority of section 1951, the city council could fix a term of office and the compensation of a city tax collector, and prescribe his duties. We do not think that section 3095 was intended to combine such office with a county tax collector, but merely to impose certain duties upon the county tax collectors, and other county officers, the duties there provided, if and when the city council shall elect to have those duties thus performed, evidenced by an ordinance. The state law then took effect in that respect, and, as we have stated, the duties were those imposed by law and not by city ordinance.

■ Appellant sought to show that Camp did not know of that ordinance, but that he had an oral agreement with the city clerk and mayor for compensation of $1,000 per annum, and not the compensation fixed by that section (3095, Code). Evidence to that effect was excluded by the court. We think the ruling is well supported. Section 1899, Code; City of Gadsden v. Jones, 227 Ala. 395, 150 So. 359; Van Antwerp v. Board of Com'rs of Mobile, 217 Ala. 201, 115 So. 239; General Electric Co. v. Town of Ft. Deposit, 174 Ala. 179, 56 So. 802; Coleman v. Town of Hartford, 157 Ala. 550, 47 So. 594.

It is also insisted that Camp and the city acted under the parol arrangement, and though its manner of execution was prohibited by law, their conduct had the effect of estopping them to deny legality of its formation. We cannot sustain the contention, not now considering whether such an estoppel is ever available. See Oppenheim v. City of Florence, 229 Ala. 50, 155 So. 859 [9 and 10].

Their only conduct inconsistent with the legal status created by the ordinance and section 3095 is the amount of compensation paid. We do not think that his refusal to accept the amount of compensation so provided, and the payment to him of a larger sum fixed an official status different from that provided by section 3095. When the ordinance was adopted, as provided in section 3095, his official duty was fixed by law, and he had no right to decline to render the service for the maximum of compensation so provided. When he therefore collected city taxes, he was acting as a matter of law in accordance with the duty imposed by section 3095, and the payment to him of compensation different from its provisions, and pursuant to a verbal contract could not change the effect of section 3095 in respect to his official duties and status.

Assuming that the city could not recover the difference in amount paid and amount provided by section 3095, on account of the voluntary nature of the payment, that would be the only result in respect to the questions here involved.

We do not think that the situation is affected by the ignorance of Camp as to the passage of the city ordinance. It was duly passed and published before the bond sued on was given. He was called upon to act as directed by law upon the adoption of such ordinance. It was his duty to comply not because of section 1951, but of section 3095. There is no legal evidence that the council provided for a tax collector under section 1951. This would have to be done in a formal manner. He knew he was performing the duties prescribed by section 3095, as well as by section 1951, under which no legal action

was undertaken. He must take notice whether the council acted under one or the other of those statutes, when the records show by what authority they did act. The due publication of an ordinance is notice of its enactment. Section 1999, Code; 43 C.J., 546, § 852.

The foregoing discussion expresses our views on the questions argued in brief for appellant down to the discussion of assignment No. 41. That assignment challenges the judgment to the extent that interest was allowed. Appellant here contends that interest is only chargeable to the surety from the time when notice was given to it of the breach. But we think that the interpretation of our statutes is to a different effect. In State v. Lott, 69 Ala. 147, 149, on page 155, the court held the sureties to the same liability as was the principal, using this language: "The official bond was a security for the performance of the duty at that time; its condition, though written in general words, embodied a pledge to perform the duty. The failure to perform was a breach of the obligation of the bond, damnifying the State." From that premise the opinion proceeds to the conclusion that interest was chargeable from the breach. The sureties were held to be so bound. Randolph v. Brown, 115 Ala. 677, 22 So. 524; McPhillips v. McGrath, 117 Ala. 549, 23 So. 721.

It is also insisted that the Act of July 18, 1931, page 620, amending section 3088, Code, fixes September 30th rather than July 10th as the date when the collector must make final settlement. But we understand that amendment to relate only to the settlement to be made in 1931, not that to be made afterwards. The settlement here involved was for the year beginning October 1, 1931, due to be made not later than July 10th of 1932.

We cannot sustain assignments numbered 49 and 50 relating to an overpayment for 1932. This is included in item 6 (page 88, Transcript) of the finding of facts. Item 4 shows that a balance of $17,830.50 was due to the city by Camp after deducting $376.11, an overpayment made by him for the taxes of the following year, which he collected. For overpayment so made the city refunded to him $201.33 in cash (page 51, Transcript), so that the allowance of the credit of $376.11 was found by the court to include the $201.33, which had already been refunded. The net result is that in fixing the balance the credit allowance should have been $376.11, less $201.33. So that in item No. 6 the court merely charged that amount back to Camp, by adding it to the balance instead of making a different calculation for item No. 4. The result is the same, and inherently it only goes to the amount due under No. 4, and is not a charge for overpayment of salary to Camp, for which it claimed his bond is not liable. It does not seek to recover from Camp an amount wrongfully paid him, but since he was paid that amount in cash by the city, he is not due to be credited with it, else he would get paid twice. But since he was so credited in item 4, the amount was added to the balance as a method of accounting.

Assignment No. 4. This relates to a motion for a new trial. The argument here presents nothing which we have not considered.

Assignments Nos. 35 and 36. The form of tax receipt used by Camp was shown in evidence to be that used in receipting for state and county taxes, with the addition of the city taxes on the same instrument. Such evidence may have had a tendency to show that Camp understood he was acting in one capacity, doing a single official duty, when he made the collection and issued the receipt. While we think it is not necessary to show that, it was not harmful to him to do so.

We have expressed our views on the questions argued in brief, and find no reversible error.

Affirmed.

GARDNER, BOULDIN, and BROWN, JJ., concur.