181 So. 752

**CITY OF OPP v. BROGDEN et al.**

3 Div. 254.

Supreme Court of Alabama.

May 26, 1938.

Simmons & Simmons, of Opp, for appellant.

A. A. Carmichael, Atty. Gen., and Jack Crenshaw, Asst. Atty. Gen., for appellee.

GARDNER, Justice.

Section 201 of the Revenue Act of 1935 (General Acts 1935, page 256) was originally enacted as section 239 of the Revenue Act of 1919 (General Acts 1919, page 352), and subsequently brought into the Code of 1923 as section 3095. This statute (the proper construction of which is the matter of primary importance here involved) reads as follows:

"Any municipal corporation in this State, may, by ordinance duly adopted, provide for the assessment, equalization and collection of taxes due such municipality, by the officers and boards provided in this Chapter, and all the machinery herein provided for the assessment, equalization and collection of State and county taxes, the enforcement of such collection, the sale of property for the collection of taxes and the redemption from such sales, shall be applicable to the assessment and collection of such municipal taxes, the sale of property for the collection of such municipal taxes and the redemption from such sales, and the assessor and collector shall receive such compensation as may be fixed by the

182

governing body of such municipality, not to exceed one-half of one percent for assessing and one-half of one percent for collecting."

In United States F. & G. Co. v. State, 231 Ala. 375, 165 So. 71, the exigencies of the case required us to go no further in the matter of the interpretation than to hold that the adoption of the ordinance by the city in accordance with the terms of the statute, rendered it mandatory upon the tax collector to collect the taxes for the municipality.

But as the statute merely adopts in very general terms the existing machinery for the assessment, equalization and collection of State and county taxes, the enforcement thereof, as well as the matter of redemption from tax sales, many questions have arisen concerning the proper procedure to be followed, and the duties of the respective officers involved in relation thereto. It is upon these questions the bill seeks judicial determination.

■ We are left to determine the legislative intent as best we may from the language of the statute, and its evident purpose, considered in connection with the existing laws relating to the subject matter. We think a fundamental basis for the statute's proper interpretation is the evident subordination of the liens of the city for municipal taxes to the lien of the State and county for like purposes.

■ In section 2129, Code of 1923, there is provided a lien for taxes due cities and towns upon all property assessed for taxation, which shall be superior to all other liens, except for taxes held by the State and county. This exception disclosing the superiority of the liens of the State and county to that of the municipality, as provided in the above noted section, is emphasized by section 372 of the Revenue Act of 1935, providing, first, for the lien of the State, second that for the county, and, third, for the municipality, with the express stipulation that "these liens *shall be superior to all other liens and shall exist in the order named.*" (Italics supplied.)

It is clear enough, therefore, that the lien for the State and county is superior to that of the municipality, and that the adoption of any procedure which would confuse the matter of tax collection and place them upon a plane of equality, should be carefully avoided as out of harmony with this well established rule of superiority.

■ The sale of lands for State and county taxes (General Acts 1935, page 351 et seq.) has been separate and apart from those for city taxes. Section 2124 et seq., Code of 1923. The statute clearly contemplates the use of the State machinery for such purposes in the matter of municipal tax sales and redemption, but contains no evidence of any intention to change the existing laws as to the matter of separation as well as that of superiority of State and county over the municipal tax liens.

The above noted statute is, therefore, to be interpreted as having reference to the adoption of State machinery without the disturbance of the existing rule as to separateness and superiority as just outlined. It was not the legislative intent to add any burden to the State and county as to the enforcement of these tax laws or grant to the municipality any advantage other than that of economy and convenience in the use of State machinery in the matter of this tax enforcement. It is to be noted that when a different procedure was desired, the legislature so prescribed as evidenced by the Act of June 26, 1931. General Acts 1931, page 337.

■ Bearing in mind, therefore, these fundamental distinctions, we proceed to a consideration of the inquiries involved. The first, inquiry (a), relates to the duty and authority of the tax collector to include city taxes in his official receipt for State and county taxes. As we view it, the purpose of this statute was to furnish to the municipality a more economical, and perhaps in some respects a more convenient method of attending to its tax questions by experienced officers already bonded for the faithful performance of their duties. It bears no indication of any intention to change any fundamental principle in reference to these matters, but deals with methods of procedure. It merely adopts for the municipality the statutory taxation machinery available for the State and county. Theretofore all such matters had been separate and distinct, unless modified by the lawmakers to meet some local condition. We think this applies to the issuance of tax receipts.

Section 167 makes provision for the issuance of a receipt by the collector from a book kept for that purpose, which is referred to in the succeeding (168) section. Provision is made for duplicate receipts to bear the same number as the receipt issued

to the tax payer, and these duplicates are preserved in the book from which the receipt is taken. And at the end of the tax year, this book is to be delivered to the chairman of the Board of County Commissioners. Such board is in no manner interested or concerned with municipal taxes, and the inclusion thereof in such receipts would but tend to confusion and misunderstanding. We think it therefore was the legislative intent that separate receipts be issued for municipal taxes and separate books kept for such purposes.

What we have heretofore said suffices to show the legislative intent that the right of the State to collect its taxes first is of paramount importance, and it requires no discussion to show that the tax collector is not lawfully authorized to require the payment of the city taxes before permitting the payment of the State and county taxes.

And in sections 215 and 216 of the Revenue Act of 1935, the tax collector is required to keep a book of delinquent taxes for delivery to the judge of probate on or before the first day of March.

The suggestion of the complainant city that in making such report the collector is authorized or required to merge the amount due the city into the entire amount shown by the report as being delinquent taxes, is out of harmony with the principle herein announced, and would tend to confusion. In making up such report, it is the duty of the collector to keep strictly separate and apart the amounts due as city taxes and the costs and charges incident thereto from those due the State and county.

Likewise, as to the enforcement by the tax collector of any decree of sale for delinquent taxes (section 224, Revenue Act 1935), and in the advertised notice for such sale, he should not merge with the State and county the amounts due for city taxes, which should be separately listed with the costs and charges incident thereto. Upon the matter of sale of the property, in view of the fact that the right of the State and county is a higher right than that of the city, the sale from city taxes should be separate from, and not simultaneously with the others, but subsequent thereto. If at the sale for State and county taxes, the State becomes the purchaser, the collector is yet authorized to offer the property for sale under the city tax lien. And any right acquired

thereunder would of course only become effective upon a redemption by the owner. Nevertheless there is nothing to prevent such a sale, and the desire to secure city taxes promptly dictates such a course. And the same procedure would be followed whether the State or some third person should be the purchaser at the first sale.

As to the decree to be entered by the judge of probate fixing the date to hear the report as to delinquencies, we think, the city taxes may well be included in the same decree as that concerning the State and county tax delinquents, but the amount due for city taxes with costs and charges should not be merged with the State and county tax matter but kept separate therefrom.

In section 217 (a), Revenue Act of 1935, the form of notice to be given delinquents is specified and to follow the form there given suffices for all purposes. But in the decree ordering a sale of the property the probate judge should separately list the amount of any taxes due the city so that the same may be readily distinguished from the taxes due the State and county. The form of the decree for the sale of the property is set out in section 223 of the above noted Act. But to conform to the principle of separation herein recognized, we think at the conclusion of the decretal form found in section 223 there should be added a similar paragraph as to the lien of the city for a specified amount with a particular description of the property upon which the city has a lien.

We have observed the legislative policy that taxes due the State should be first secured and their payment to the State is a matter of paramount importance. Any construction of the statute, therefore, which would hinder the State in this respect would of consequence be out of harmony with this declared policy. We therefore think that the chancellor correctly interpreted section 269 of the above cited Revenue Act as not authorizing the judge of probate to decline to accept redemption of land sold to the State for satisfaction of State and county taxes until the redemptioner tenders sufficient funds to redeem the property from sale for payment of city taxes.

Section 270 of the Act deals with the matter of redemption where the property has been sold to another than the State, and the probate judge must require

the deposit of the amount specifically required therein, including the amount of all taxes, both State, county and city, assessed to the purchaser and not paid, but due. The language of this section, however, does not require or empower the judge of probate to decline to accept the amount provided therein until the deposit of a fund sufficient to redeem the property from sale for payment of taxes due the city has been made. If, however, the city becomes the purchaser at a sale for State and county taxes as well as at its own sale for city taxes, we are of the opinion the court below correctly decreed the judge of probate may require the deposit of a sum sufficient to pay all city taxes including a sum sufficient to redeem the property from a sale for such city taxes. And if the city becomes the purchaser at a sale for State and county taxes only, the judge of probate is authorized to decline to accept the redemption unless sufficient sum is also offered to pay taxes, costs and charges due the city. Where a person, other than the State or city, is the purchaser at a sale for city taxes, the charges for redemption are there specified in said section 270. And when the city is the purchaser at a sale for city taxes, the charges are those specified in section 269 for sale to the State for State and county taxes.

In harmony with the principle of priority herein noted, the collector should auction the property first for the payment of State and county taxes before auctioning the property to satisfy the taxes for the city. And the same principle demands that in the matter of redemption, the State and county are entitled to be paid first the lawful taxes, penalties, interest and charges before any portion of the deposited sum is paid to the municipal corporation. Nor do we think the State is authorized to purchase property at a sale for the purpose of satisfying tax liens due a municipal corporation.

We have here considered the several inquiries presented in the bill.

As previously observed, the language of section 201 of the Act (section 3095, Code) is broad, and it is evident the lawmakers intended, by so comprehensive an adoption for the municipal corporations of the laws relating to the subject matter dealing with the State and counties, to leave the details of practical operation thereof to be supplied by judicial construction of the several statutory provisions. And in so doing, little aid was given in the matter of proper interpretation.

We have endeavored, as best we may, to so construe the applicable statutes in the light of appropriate legislative policy, to answer the several inquiries as to carry out the legislative intent and prove helpful in the practical administration of the statutes. In so doing, we find ourselves in accord with the rulings of the chancellor, and his decree will be accordingly here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.